THOMAS COOK, Respondent, *v.* THOMAS S. HACKLEMANN *et al.*, Appellants.

1. *Distress warrant — Execution — Sale and deed under.* — Where the State auditor issued a distress warrant (R. C. 1855, p. 1542, § 3 *et seq.*; Wagn. Stat. 1335, § 18 *et seq.*) against a county sheriff for default in payment of public money, and on failure to collect the amount thereof, levy was made on the land of the securities on his official bond, the authority of the sheriff to convey the property to the purchaser will not be presumed from the mere recitals in the conveyance itself. The execution of the bond, the default of defendant, the issue of the warrant, the failure to collect the amount from the principal obligor must be shown *aliunde*. In the absence of a provision similar to that touching the title vested in the grantee in case of tax sales (Wagn. Stat. 1204, §§ 111–12), such recitals in a sheriff's deed, under a distress warrant, are not even *prima facie* evidence of the regularity of the previous proceedings,

2. *Executions — Judicial sales — Executions under distress warrant.* — The act touching judicial sales (R. C. 1855, p. 748, § 56; Wagn. Stat. 612, § 54) has no application to a sale under an auditor's distress warrant.

*Appeal from Third District Court.*

*Lindenbower & Sherwood,* for appellants.

*F. P. Wright,* for respondent. .

I. The recitals in a deed executed by a sheriff upon a sale under a distress warrant are not *prima facie* or presumptive evidence of the facts therein stated, as they are in a deed made by virtue of an execution upon a judgment. The act concerning executions does not apply to sales made by virtue of distress warrants.

II. It devolved on the defendant to show that McKay, the collector, was a defaulter and delinquent, and also that Cook was a security on the bond, and that he executed that bond.

*R. F. Butler*, for respondent.

A deed made by a public officer purporting to convey the property of a private individual as an official act, by virtue of statutory power, is never evidence of anything except its own existence, unless made so by express provisions of statute. (Moreau v. Detchemendy, 41 Mo. 431; Bosworth v. Bryan, 14 Mo. 579; McCormick v. Fitzmorris, 39 Mo. 24; Stierlin v. Daily, 37 Mo. 483; 2 Johns. 280; Ronkendorf v. Taylor, 4 Pet. 349; 2 Washb. Real Prop. 545 *et seq.*) No presumptions are indulged in favor of the acts of public officers in cases like the present. The burden is on the purchaser to make out his title by showing that every prerequisite of the law had been fulfilled, and the acts must be expressly authorized by statute. (Morton v. Reeds, 6 Mo. 64; Reeds v. Morton, 9 Mo. 878; Crook v. Peebly, 8 Mo. 345; Tanner v. Stine, 18 Mo. 580; Blair v. Coppage, 16 Mo. 495; Ruby v. Huntsman, 32 Mo. 501; Stierlin v. Daly, *supra;* Gibbons v. Steamboat Fanny Barker, 40 Mo. 253; Moreau v. Detchemendy, *supra;* 2 Johns. 280; 4 Pet. 349; 2 Washb. on Real Prop. 545–71.)

BLISS, Judge, delivered the opinion of the court.

Plaintiff brought ejectment in the Cedar Circuit Court, and, after showing a chain of title from the United States, the defendant exhibited a sheriff's deed to himself, and gave no other evidence. The deed was executed by L. Davis, as sheriff of Cedar county, and recites that P. B. McKay, sheriff and *ex-officio* collector of said county for the year 1861, failed to pay into the State treasury the amount with which he stood charged upon the State auditor's books as due the first Monday of January, 1862; that the auditor ascertained the balance due to be $843, and on the 15th of December, 1863, issued a distress warrant in favor of the State and against said McKay, as principal, and his securities upon his official bond, including the plaintiff, directed to John H. Paynter, then sheriff of said county, which was delivered to him June 13, 1864; that said Paynter levied on 240 acres, the real estate in dispute, describing it; and

after giving twenty days' notice by handbills, on the 20th of March, 1865, in Stockton, at the court-house door, and during the sitting of the County Court, exposed for sale at public auction all the right, title, and interest of said McKay and his five securities, including plaintiff, and naming them, in and to said real estate; that at said sale defendant Hacklemann was the highest and best bidder, at $120, and it was struck off to him at that sum; that he paid for the same; also, that said auditor, on the 18th of July, 1868, made an order upon said Davis, as sheriff (the said Paynter being dead), to convey said land to said Hacklemann; and thereupon the said Davis, "in consideration of the premises, and in obedience to said order, and by virtue of the authority vested in him by law and the said auditor of public accounts," proceeded to convey the interest of the signers of the bond unto said defendant, etc.

When the deed was offered in evidence, objection was made to it because it was void upon its face; and after the evidence was concluded, the plaintiff asked the court to instruct the jury that the deed was not sufficient to show title in defendant, which the court refused to do, but, at defendant's instance, instructed them that if they believed that sheriff Davis executed the conveyance to defendant Hacklemann in consummation of a sale by his predecessor, Paynter, under a distress warrant from the State auditor against McKay and his securities, they would find for defendant, provided it was sold at either door of the house used as a court-house. No evidence whatever, unless the recitals were evidence, had been given in relation to the sale by Paynter, the distress warrant, or any of the proceedings upon which the deed was based. Waiving for the present the consideration of the alleged irregularities upon the face of the deed, it is certain that of itself it could have no force or effect. It is not a deed of the owner of the land, and the authority to make it should first have been established. If McKay had been sheriff and tax collector, and had proved a defaulter; if he had given a bond upon which the plaintiff was security; if the auditor had issued a distress warrant to the then sheriff under the statute; if such sheriff could not collect the same of the goods and chattels and real estate of the

delinquent, and had in consequence levied upon the property of the plaintiff as security, advertised and sold the same according to law, then we may assume he had a right to make a deed. But this authority will not be presumed unless the law positively requires it. In *ex parte* proceedings, especially those proceedings not expressly authorized by the party against whom they are had, nothing is presumed. There is no judgment concluding all the preliminary facts, there has been no process of law, and everything the law requires in order to charge the property sold remains to be proved. A principle so universally recognized and acted upon, and without which all property would be insecure, needs but to be stated to command assent. Some of these facts, it is true, so far as they concern the action of the sheriff under the warrant, may be proved by his return; and in relation to the whole of them, we need not say what would be competent or sufficient proof, because in this case no proof whatever was offered. They were all assumed as proved by the recitals of the deed—an assumption not warranted by law.

The law under which these proceedings were had (R. C. 1855, p. 1542, etc.) makes no provision in relation to a deed of the property sold, or its effects. And, although in the analogous case of tax sales, the revenue act expressly provides that a "tax deed" shall vest title in the grantee, and be conclusive evidence that the legal preliminaries had been complied with, yet this court held, in Abbott v. Lindenbower, 42 Mo. 162, and in accordance with principles, as applied to the subject, that are universally recognized, that, though the Legislature has power to make such deed *prima facie* evidence of the regularity of the previous proceedings, throwing the burden of proof of irregularity upon him who would impeach them, yet they could not make it conclusive or make it pass title when those proceedings were in fact irregular. When there is no judgment to conclude them, they are open to investigation; otherwise property would be taken without due process of law. A similar provision in relation to the effect of a deed upon sale under an auditor's distress warrant might be held to throw the burden of proving irregularities upon the party who resisted it. But,

without such provision, the one who offers the deed must show that he is entitled to it.

To sustain his view of the legal effect of this deed, the defendant relies upon section 56, p. 748, of the act of 1855, concerning executions, which is the same as the present provision, and contends that the requirement of that section in relation to the recitals, and the provision in relation to their legal effect, apply as well to a sale under the auditor's distress warrant as to judicial sales. That view will not bear a moment's investigation. If it applied to sales like the present, it would also apply to tax sales, and to all sales made by any person who could be called an "officer" under any kind of legal proceedings. The chapter containing the section pertains to executions — a word of plain and single import — and the section itself speaks of the "parties to the execution, and the date of the judgment, order, or decree, etc., as recited in the execution "— clearly and unequivocally referring to an ordinary execution issued upon a judicial judgment, order, or decree, if, indeed, it is not a solecism to suppose there can be a judgment, etc., that is not judicial.

Section 6 of the act then in force (R. C. 1855, p. 1544) provided that "property distrained shall be advertised and sold in such manner and at such time as is prescribed by law for advertising and selling property by virtue of a writ of *fieri facias*." A liberal interpretation of this provision might perhaps authorize the sheriff to make a deed of the property sold by him, or upon petition, if sold by his predecessor, as the act makes no express provision in regard to deeds in this class of sales; or we might perhaps say that when the law directs an officer to make a sale of land, it would imply the right or duty of conveying in pursuance of the sale. But it is not necessary at present to decide these questions, as there was manifest error in the effect given by the Circuit Court to the deed under consideration.

The judgment of the District Court, reversing that of the Circuit Court, is affirmed and the cause remanded. The other judges concur.