# CITY TRUST COMPANY, Appellant, v. CORA A. CROCKETT, Defendant.

### Division One, July 30, 1925.

1. **PLEADING: Suit on Special Tax Bill: Reciting Ordinances.** Since the statute (Sec. 8369, R. S. 1919) provides that in cities of the third class "it shall be sufficient for the plaintiff, in any suit on such special tax bill, to plead the making of the tax bill sued upon, giving dates and contents thereof, and . . . to allege that the party or parties made defendant own, or claim to own, the lands charged, or some estate or interest therein, as the case may be, and to file the tax bill in suit," a petition is not defective because it recites no part of the resolutions or ordinances pertaining to the improvement, and merely refers to the tax bill as an exhibit. If it alleges that the improvement was made under the authority of a certain ordinance; that the city council in pursuance of said ordinance awarded the contract to a certain contractor; that the contract was duly confirmed by another certain ordinance; that the work has been completed according to the terms of the contract and accepted by the city; that thereafter the cost was duly assessed and apportioned against the land chargeable therewith; that the tax bill was issued according to said apportionment; that defendant owns the lot, particularly describing it; that the amount assessed and apportioned against said lot was its proportionate share of the cost and is a certain sum, and that the tax bill was issued to the contractor for doing the work, and is due and unpaid, it is sufficient.

2. **SPECIAL TAX BILL: Separate Statement of Costs.** Neither Section 8323, Revised Statutes 1919, nor any other statute, requires that a special tax bill issued in payment for a street improvement shall state separately the cost of grading, the cost of curbing and the cost of paving, or that a separate tax bill shall be issued for the costs of each of these kinds of improvement. On the contrary said Section 8323 says that the city shall compute the cost of the improvement and apportion it among the tracts chargeable therewith, "charging each tract of land with its proportionate part of said cost as herein required," and there is therein no requirement for separate statement of the cost of grading, curbing and paving.

3. ———: ———: **Corner Lots: Curbing and Extensions.** In the absence of any showing to the contrary a special tax bill reciting that

the cost of the street paving, required to be apportioned according to front feet, was apportioned as "provided by statute," will be considered as a compliance with that part of the statute (Sec. 8323, R. S. 1919) declaring that "in making curbing, corner lots shall be charged with the cost of extending the curbing to the curb lines of intersecting streets, and curving and extending the curbing back to the street line at intersecting streets and alleys;" especially so, where such statutory requirement was incorporated in the resolutions of the city council authorizing the improvement, and the subsequent ordinances, accepting the work and approving the engineer's report, carried forward the terms of the resolution by express reference.

4. ———: ———: **Notice to Property Owners.** Published resolutions adopted by the council of a city of the third class, if they so recite, are notice to property owners, that the street is to be brought to the established grade, that the grading, paving and curbing are to be treated as one improvement, that the costs are to be charged against the abutting lots and tax bills issued to pay the costs, in accordance with the provisions of the statute (Sec. 8323, R. S. 1919).

5. ———: ———: ———: **Grade to be Established.** Published resolutions adopted by the city council, reciting that "the council deems and hereby declares it necessary to grade, pave and improve" a certain street "by bringing the roadway of the same to the established grade and subgrade, . . . in accordance with plans and specifications therefor prepared by the city engineer, adopted and approved by the council and now on file with the city clerk for the inspection of the public," sufficiently apprise the property owners of the grade to be established for the street improvement.

6. ———: **Protest: Finding of Council.** An ordinance reciting and declaring, in the terms of the statute, that a majority of the qualified property owners had not protested, must be taken as true, if the ordinances and resolutions and the publication are otherwise sufficient.

7. ———: **Notice of Necessary Excavation to be Done.** Published resolutions adopted by the council of a city of the third class reciting that "the council deems and hereby declares it necessary to grade, pave and improve" a certain street "by bringing the roadway of the same to the established grade and subgrade, . . . in accordance with the plans and specifications therefor prepared by the city engineer, adopted and approved by the council and now on file with the city clerk for the inspection of the public," sufficiently show the amount of excavation necessary to be done, and enable property owners to intelligently understand the nature of

the improvement proposed, and are sufficient in view of the amendment of the statute in 1901 (Laws 1901, page 65; Sec. 8323, R. S. 1919) declaring that "the city council may, by ordinance, include in the special assessment the paving" and "the cost of bringing to established grade said street" provided "the resolution declaring said paving necessary to be done shall also declare that said street shall be brought to the established grade, and that the cost thereof shall be included in the special assessment for paying for said paving."

8. **STREET IMPROVEMENT:** Delegation of Legislative Power. The city council is a legislative body, and its law-making power in the form of charter statutes is not a delegation of power from the Legislature within the meaning of the Constitution forbidding the delegation of legislative power.

9. ————: Protests: Withdrawal. The right of property owners to withdraw their protests or remonstrances to a street improvement is given by law unless prohibited by statute. Their right to withdraw their protests exists during but not after the expiration of the period fixed by statute.

10. ————: ————: ————: Delegation of Legislative Power: Finding of Council. Since the statute (Sec. 8324, R. S. 1919) declares that "if a majority of the resident owners of the lands that would be liable for the costs of the street improvement, shall not, within ten days, after the date of the last publication" of the resolution declaring the improvement to be necessary, "file with the city clerk their protest against such improvement, the council shall have power to cause the improvement to be made," and "if the council shall find and declare by ordinance that no such majority have so filed such protest, such finding and declaration shall be conclusive," etc., the question whether the manner and time of the publication of the resolution was in compliance with the conditions prescribed by the statute, and the further question what was the date when the ten-day period began to run, were questions of law to be determined, upon undisputed facts, by the council, and the further question whether the withdrawal by certain property owners of their protests was made in time was likewise a question of law, where made upon undisputed facts and upon a finding and record made by the council that the period had not expired. The council being a law-making body, its finding, upon undisputed facts, that the withdrawal of the protests was filed in time, was the decision of a question of law.

11. ————: ————: ————: Publication for Ten Days: In Twice-a-Week Newspaper: Finding of Council. The resolution authorizing the street improvement required its publication in four consecutive

issues of a twice-a-week newspaper. The statute (Sec. 8324, R. S. 1919) required the resolution to be published "for two consecutive insertions in a weekly newspaper, or seven consecutive insertions in a daily paper." The resolution was passed on July 2nd, and its publication was inserted in a twice-a-week newspaper on July 3rd, July 6th, July 10th and July 13th. The statute further provided that if a majority of the resident property owners liable for the costs of the improvement "shall not within ten days after the date of the last publication" file their protest with the city clerk, the council shall have power to make the improvement. A majority of the resident property owners filed their remonstrance on July 9th; and on July 23rd ten of them filed a withdrawal of their protests, and if their withdrawal was within time a majority of the property owners had not protested. On July 24th the council passed an ordinance finding and declaring that a majority of the property owners had not protested. *Held*, that the publication was in compliance with the statute; that July 13th was the date from and after which the ten-day period for filing protests began to run; that the withdrawals were filed in time, and that the finding of the council that a majority had not filed a remonstrance is conclusive.

12. ————: **Special Meeting of City Council.** The statute contains no provision fixing the time of meetings of the council of cities of the third class, and there being no provision forbidding special meetings, an ordinance providing for a street improvement may be enacted at a special meeting, held in accordance with the general ordinances, providing for a special meeting upon the call of the mayor and two members of the council, where all members are given notice thereof, although no notice of the meeting is given to the owners of property which is to be taxed with the costs of the improvement.

13. ————: ————: **Reading Three Times.** The only statutory provision being that "no ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the council shall vote therefor, and the ayes and nays shall be entered upon the record; and all bills shall be read three times before their passage," the council at a special meeting, held in compliance with the general ordinances, may, by three successive readings, enact an ordinance for a street improvement, without giving notice of the meeting to property owners.

14. ————: **Right of Property Owners to be Heard: Constitutional Right.** The statutes governing cities of the third class make no provision that owners of property to be taxed with the cost be heard before the enactment by the council of ordinances authorizing a street improvement; and inasmuch as a statute authorizing

the council to make such improvement, without a petition from property owners and without granting a right of protest, is valid, such denial of a right to be heard denies to them no constitutional right.

15. ———: Remonstrance: Instruction. An instruction that, upon the issue whether a majority of the resident property owners had remonstrated, the finding of the council that such majority did not remonstrate was conclusive, and upon that issue the finding must be for the city, is proper, where the facts are undisputed and from them it is clear that the only question was one of law, whether certain protests had been withdrawn within the time fixed by the statute, thereby reducing the protestants to less than a majority.

16. SUIT ON SPECIAL TAX BILL: Peremptory Instruction: Defects in Construction. The court does not err in refusing to give a peremptory instruction to the jury to find for plaintiff in the sum named in the tax bill with interest, where there is evidence that holes or irregularities appeared in the surface of the street some months after it was in use.

17. ———: Instruction: Construction in Compliance with Contract. An instruction which tells the jury in a suit on a special tax bill that if they find the work of improving the street was not done in substantial compliance with the contract, and if they find for the plaintiff to allow him only the reasonable value of the work done in the manner it was done, and refers them to the contract for an ascertainment of the plans and specifications and requires them to determine therefrom whether the work was done in substantial compliance with the contract, is prejudicial error against the plaintiff.

Corpus Juris-Cyc. References: Assignment for Benefit of Creditors, 5 C. J., Section 338, p. 1218, n. 31. Assistance Writ of, 5 C. J., Section 3, p. 1317, n. 14. Trusts, 39 Cyc. p. 641, n. 87.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Shepard & Hawkins* and *Shepard Barclay* for defendant.

(1) The statute making the city council finding ''conclusive'' in the matter of imposing a tax upon de-

fendant's property is in violation of defendant's rights under the Fourteenth Amendment to the Federal Constitution and is not due process of law (under any constitution) in reference to the taxing power. State v. Atkinson, 271 Mo. 28; Cook v. Hackleman, 45 Mo. 317; Birdsong v. Brook, 7 Ga. 88; Ewart v. Davis, 76 Mo. 129. (2) The statute (Sec. 9255, R. S. 1919) if sustainable in any aspect, should be held in conflict with said Fourteenth Amendment when, as here, the council denied to the remonstrants, property owners, any opportunity to be heard on the "finding" made as to the facts. Abbott v. Lindenbower, 42 Mo. 162; Allen v. Armstrong, 16 Iowa, 508; Embree v. Liberty Boulevard Road Dist., 257 Mo. 593; State v. Sheetz, 214 S. W. 376; Wilcox v. Phillips, 260 Mo. 664; Gist v. Rackliffe-Gibson Const. Co., 224 Mo. 369. (3) The petition does not state a cause of action; recites no part of the resolutions or ordinances enacted by the city council pertaining to the street improvement; neither does it state any of the contents of the tax bill offered in evidence, but merely refers to the tax bill as an exhibit. Such scanty petitions have generally been held insufficient. Bowling v. McFarland, 38 Mo. 465; Irvin v. Devors, 65 Mo. 625; Vaughn v. Daniels, 98 Mo. 234; Joy v. Mamion, 28 Mo. App. 55; Johnson v. Crowley, 207 S. W. 235; McManus v. Butler, 213 S. W. 447; Sec. 8369, R. S. 1919. (4) This case shows the ordinance was read three times and passed the same day; a direct defiance of Sec. 8384, R. S. 1919. (5) The published notice was invalid. Plaintiff claims the publication in a twice-a-week paper is the same as publishing in a weekly paper, but such cannot be the fact, for the expression "weekly newspaper" unerringly conveys the idea to the mind of a reasonably intelligent person of a paper issued once a week. Iowa State Bank v. Jackabson, 66 N. W. 453; Ogdon City v. Armstrong, 18 Sup. Ct. Rep. 98; Auditor General v. Fisher, 47 N. W. 574; City Street Imp. Co. v. Babcock, 55 Pac. 762; Russell v. Croy, 164 Mo. 69; Byrd v. Bargsteiner, 100 Ga. 486; Derby v. Modesto, 104 Cal. 515; Webster's Un-

abridged Dictionary; Anderson's Law Dict. 111; 4 Cyc. 876. (6) Constructive service is but a poor substitute for services, only warranted by necessity. The law regulating such service must be strictly complied with and unless the statute is strictly complied with the city council acquires no jurisdiction in the premises, and all proceedings in connection therewith are void. Webb v. Strobach, 143 Mo. App. 459; Stanton v. Thompson, 234 Mo. 7; John McMenamy Inv. Co. v. Stillwell Co., 184 S. W. 467; Bartley v. Bryanton, 17 Fed. 873; Bigelow v. Chatterton, 51 Fed. 614; Cissell v. Pulaski Co., 10 Fed. 891; Cohen v. Portland Lodge, 152 Fed. 357, 144 Fed. 267; Otis v. Epperson, 88 Mo. 134; Chilton v. Hedges, 204 S. W. 900. (7) Where notice is given by publication and the statute prescribes the way the publication shall be given, a substitute which may seem just as good will not suffice. State v. Dobbins, 116 Mo. App. 29; Russell v. Croy, 164 Mo. 69; Williams v. Ettenson, 178 Mo. App. 178. The city council, in fact does not acquire jurisdiction giving it the right to proceed with the work by publishing the resolution provided by the statute. That is an initial step which may be defeated by the property owners filing with the council a remonstrance against having the work done, and the property owners have ten days from the last day of the legal publication in which to file their protest. If such protests are filed, they oust the city council of its apparent jurisdiction, and if it proceeds to have the work done over the protest of the majority of the resident property owners owning a majority of the front feet abutting on the street sought to be paved, its actions are void and the tax bills cannot be collected. Sedalia v. Montgomery, 227 Mo. 1; McKim v. Independence, 175 Mo. App. 332; Knopfi v. Roofing Co., 92 Mo. App. 287; Rhodes v. Koch, 189 Mo. App. 371. (8) Protesting property owners may withdraw their names from the protest at any time during the period they have the right to file protest, but cannot withdraw their names after that time has expired; and all names remaining on the protest the last day for protesting

must be counted against having the work done instead of in favor of having it done. Sedalia v. Montgomery, 227 Mo. 1; Hoover v. Newton, 193 S. W. 895; State ex rel. Koch v. Farrington, 195 S. W. 1044. (9) The property owners were vitally interested in the proceedings before the council, which might entail a tax against their property, for which it might be sold; therefore, under all rules of fair procedure, they had the right to appear and should have been given an opportunity to be heard by the council before their rights were passed upon, or its finding became "conclusive." Road Imp. Dist. v. Mo. Pac. Ry. Co., 275 Fed. 600; 285 Cyc. 980; James v. Barber Co., 74 Mo. App. 393; State ex rel. Coleman v. Black, 151 S. W. 148. (10) The publication issued by the city should have shown the amount of excavating necessary to be done and the nature of the work so that the property owners could have intelligently understood the nature of the work proposed to have been done by the city for which they would be called upon to pay. Delmar & Veco v. Lewis, 196 S. W. 1137. (11) The resolution published by the council, the ordinances passed and all proceedings in connection therewith failed to apprise the property owners of the grade to be established for the street improvement, for which reason the tax bill sued thereon is void. McGuire v. Wilson, 187 S. W. 612. (12) The tax bills issued should have stated separately the charges made against defendant's property for excavating, grading, curbing and paving; and mingling them is in violation of the statute and of the law of liens. Sec. 8323 enacts different apportionments for grading, paving, curbing and guttering, and the defendant's instruction should have been given, as part of the work was not divisible by frontage only. In such cases, mingling the charges is an injustice which requires a new adjustment, and invalidates the tax bill containing the lump charge. Morse v. City, 110 Mo. 509; Kansas City v. O'Connor, 82 Mo. App. 655; Kansas City v. Askew, 105 Mo. App. 84; Edgar v. Salisbury, 17 Mo. 272.

*Ward, Reeves & Oliver* for plaintiff.

(1) The petition sets out all the material contents of the tax bill. Petitions have been held good in many cases where the averments were not so fully made as in the one at bar. City of Gallatin v. Netherton, 189 Mo. App. 24; Paving Co. v. Bath Co., 136 Mo. App. 555.; Mexico v. Lakeland, 129 Mo. App. 180; Joplin v. Hollingshad, 123 Mo. App. 602; City of Carthage v. Badgley, 73 Mo. App. 123; Vieths v. P. & F. Co., 64 Mo. App. 207; Turner v. Patton, 54 Mo. App. 654; Hinerman v. Williams, 205 Mo. App. 364. (2) Unless prohibited from doing so by some provision of the charter the council of a city can finally pass an ordinance without the formality of reading it three times and can do so at the same meeting at which it is introduced. The only limitation on a city of the third class respecting this matter is Section 8287, Revised Statutes 1919. As the statute does not require the ordinance to be introduced at one meeting and go over to another meeting to be finally passed, nor requires it to be passed at a regular meeting, there is no question that the ordinances here were duly and legally passed by the city council. The minutes of the meeting touching the passing of the ordinances, conforms to the requirement of the statute. St. Louis v. Foster, 52 Mo. 513; City of Rockville v. Merchant, 60 Mo. App. 365; Hook v. Bowden, 144 Mo. App. 331. (3) The statute does not require the resolution to be published either in a "daily" or "weekly" newspaper. It requires the resolution to be published in "some newspaper printed and published in the city." What follows this quotation clearly refers to the length of time the publication is to run and does not designate or name the class of paper in which the resolution must be published. The paper designated is some newspaper, etc. It was certainly not the purpose of the law to exclude the publication in a newspaper simply because it was published twice a week, instead of once a week. Especially is this the proper construction to be given the statute under the

facts of this case, which are, that the semi-weekly paper selected was the official paper of the city and the one which had done the city printing and advertising for several years, and therefore the paper most likely to give notice to the persons interested in the improvement. No such narrow construction, as contended for by appellant, should be given the statute. Sec. 8324, R. S. 1919; State v. Brown, 130 Mo. App. 214; Hinerman v. Williams, 205 Mo. App. 364. (4) The property owners were not denied the opportunity to be heard on the protest, because there was nothing in the evidence in this case to show that they desired to be heard before the city council. There was no evidence to support the imputation of fraud or bad faith on the part of the city council. True, the protests were passed upon and some ordinances were passed and approved in relation thereto at a special or call meeting of the council. The general ordinances of the city offered in evidence provide for such call meeting by the mayor or two councilmen. There is no provision of law prohibiting special meetings of the council. The statute by implication permits the transaction of the business of the city at either a regular or special meeting. Sec. 8227, R. S. 1919; Dillon on Municipal Corps. (5 Ed.) sec. 533; Rolla v. Schuman, 189 Mo. App. 252; Savings Bank v. Ridge, 183 Mo. 506. (a) There is no provision of law in the charter of third class cities fixing the time of either regular or special meetings of the city council. Indeed there is no specific provision requiring meetings of the council. So, by necessary implication, the city council has the power to designate by ordinance the time of holding its regular meetings, and also to make reasonable provision by ordinance for the manner of calling and holding its special meetings. As nothing was shown on the trial of this case to indicate that the special meeting was held contrary to the general ordinances of the city or contrary to the previous conduct or custom of the council in such matters, then it will be presumed that the meeting was lawfully held, and that the official acts of the council were

legal. Paving Co. v. Ullman, 137 Mo. 568; Excelsior Springs v. 'Ettenson, 120 Mo. App. 222; Paving Co. v. Bath Co., 136 Mo. App. 558; Gist v. Const. Co., 224 Mo. 379; Dillon on Municipal Corps. (5 Ed.) sec. 538. (b) The statute applicable to these proceedings does not provide for a public hearing before the council on the question of protest, nor does the statute require such proceedings to take place at the regular meeting. Neither does the statute require or contemplate that notice of the meeting shall be given the protestors. Sec. 8324, R. S. 1919. (c) The record discloses that every statutory requirement was literally complied with. This being true, the property owner who has stood by and permitted the contractor to expend his time and money, is estopped in a suit on a tax bill to question the action of the city officials on the ground of fraud or on any other ground not going to matters of jurisdiction. A charge of fraud and a lack of good faith come too late after the work is done. Gibson v. Owens, 115 Mo. 258; Paving Co. v. Fleming, 251 Mo. 210; Land & Imp. Co. v. St. Louis, 257 Mo. 291; Bank v. Woesten, 147 Mo. 467; Heaman v. Ring, 85 Mo. App. 231; Walsh v. Bank, 139 Mo. App. 641; St. Louis Malleable C. Co. v. Const. Co., 231 S. W. 989; Collins v. Jaicks Co., 214 S. W. 391. (5) The resolution was not defective because it did not show the amount of excavating to be done. The contention that the excavation work must be described in the resolution would be well taken if the work had been done under the statute (with reference to third class cities) before it was amended the first time in 1901. The statute with reference to street improvements in fourth class cities still requires the excavation work to be described in the resolution, but in third class cities, the statute has not, since 1901, required the excavation work to be described in the resolution. Lexington v. Bank, 130 Mo. App. 687. (6) The tax bill is not void because the charges for excavating, grading, curbing and paving are not separately stated in the bill. The statute specifically provides for but one assessment for the entire improvement and that only one tax

bill shall be issued therefor against each piece of property. The statute does not require the tax bill to state separately the different items for grading, curbing and paving, but only requires the tax bill to state "the amount for which it is issued." Sec. 8223, R. S. 1919; Lexington ex. rel. v. Bank, 130 Mo. App. 687. (7) If the withdrawals, which were filed on July 23, 1917, were filed in time, then a majority of resident owners owning the abutting property did not protest against the improvement. The provision of the statute with reference to the publication of the resolution means that if the publication is made in a daily paper it must be advertised for seven days or one week; but if made in a weekly or semi-weekly paper, as in this case, then the advertisement must be for fourteen days or two weeks. In other words, if published twice in a paper issued once a week the notice must be fourteen days' notice; but if published in a semi-weekly paper then there must be four insertions in orders to make two weeks or fourteen days' notice. The first insertion in this case was July 3rd, and the fourth, July 13th. The insertion on July 13th was necessary to complete the two weeks' or fourteen days' notice, and the withdrawals of protest were therefore filed in time, that is, "within ten days after the date of the last publication." State v. Brown, 130 Mo. App. 219; Russel v. Croy, 164 Mo. 69.

LINDSAY, C.—The plaintiff sued, as assignee of a tax bill issued by the city of Caruthersville, a city of the third class, for certain improvements made on a part of Ward Avenue. The tax bill was issued May 4, 1918, for $457.59, bore interest at the rate of six per cent per annum, and was payable in five annual installments.

Upon the request of defendant, the cause was submitted to a jury, and there was a verdict for plaintiff in the sum of $423.47, and both parties have appealed.

The defendant, by objection duly made, challenged the sufficiency of the petition, and urges that it is insuffi-

cient. The contention is that the petition recites no part of the resolutions or ordinances pertaining to the improvement; that it does not state any of the contents of the tax bill, but merely refers to it as an exhibit. Counsel upon this point have cited several cases, only one of which was a suit upon a special tax bill.

These cases, except two, are merely authority for the well-known rule that the exhibit forms no part of the petition. Irvin v. Devors, 65 Mo. 625, was a suit on a special tax bill. The defects pointed out were that the petition failed to state that the tax bill was issued by virtue of an ordinance duly passed, and failed to state that the engineer of the city, in computing the cost, charged the lot of the defendant only with its proportion, in accordance with the frontage thereof.

In Vaughn v. Daniels, 98 Mo. 1. c. 234, the suit was one upon a tax bill issued for general taxes. The petition wholly failed to describe the lands.

In Section 8369, part of the charter of cities of the third class, there is the following provision: "It shall be sufficient for the plaintiff, in any suit on such special tax bill, to plead the making of the tax bill sued upon, giving date and contents thereof, and the assignment thereof, if any, and to allege that the party or parties made defendant own, or claim to own, the lands charged, or some estate or interest therein, as the case may be, and to file the tax bill in suit."

In this case the petition alleges that the improvement was made under authority of Ordinance No. 278, giving the date of its approval, which ordinance provided for the said improvements; that the city council in pursuance of that ordinance, and the powers in it vested by law, awarded the contract to the contractor, named therein; that said contract was duly confirmed by Ordinance No. 297; that the work had been done and completed according to the terms of the contract by the contractor and had been accepted by the city; and "that after the completion of said work, the cost thereof was duly assessed and apportioned against the land and property

chargeable therewith, according to the frontage, as provided by law.''

The petition further alleges the making and issuance of the tax bills according to said apportionments; alleges that the defendant is the owner of said lot in said city, particularly describing the same. The petition further alleges the amount assessed and apportioned against the said lot was its proportionate share of the cost of making said improvement, and was the sum of $457.59, and alleges issuance of said tax bill to J. H. Hinerman, the contractor, for said sum for doing said work and against the said lot.

The sufficiency of the petition in suits upon tax bills has been before the courts of appeals in numerous cases. Among them may be mentioned Carthage ex rel. v. Badgley, 73 Mo. App. 123; Fellows v. Dorsey, 171 Mo. App. 289; City of Gallatin v. Netherton, 189 Mo. App. 24.

We are of the opinion that the objection to the sufficiency of the petition was properly overruled.

I. The resolution declaring it was necessary to make the improvements was passed by the counsel on the second day of July, 1917. The answer is long, but its essential allegations may be summarized.

The defendant averred that the initial resolution was not published according to law and that the council acquired no jurisdiction; that said resolution was ordered published for two consecutive weekly insertions in the ''Twice-a-Week Democrat,'' a newspaper published twice a week in said city; that the first publication was on July 3, 1917; and that the last publication was on July 10, 1917; that a remonstrance signed by a majority of the resident property owners owning a majority of the front footage, was filed on July 9, 1917; that later, on July 16, 1917, there was another protest filed, signed by a majority of the resident property owners, owning a majority of the front footage abutting on the part of said streets sought to be paved; that while part of the names on each protest were the same, yet there were

seven names of resident property owners on the protest filed on July 9, 1917, whose names were not on the protest filed July 16, 1917.

In this connection, it may be stated as a fact shown by the record that the resolution was ordered to be published for four consecutive insertions, and was published in said newspaper for two weeks consecutively, in its twice-a-week issues, that is, on July 3d, July 6th, July 10th and July 13th, 1917.

The answer alleges that the council, after the filing of said protests, procured a committee to see those remonstrating, and avers that the last day for protesting was on July 20, 1917, and the last day for withdrawing from such protest was July 20, 1917, and that the withdrawals of ten resident property owners were permitted to be filed and were filed on July 23, 1917; that the regular meeting of said city council was on the first Monday evening of each month, but that said council met at nine o'clock on the morning of July 24th, without giving any notice to the protesting property owners, and passed a resolution permitting the names of ten of the protesting property owners to be withdrawn from the remonstrances; and it is alleged that the action of the council in allowing and considering said withdrawals filed on July 23, 1917, was a mistake of law and that under the law it was not permitted that said ten property owners could withdraw from said remonstrances after July 20, 1917.

It is alleged that the council was not in legal session on July 24, 1917, when it passed the ordinance making the finding and declaring that a majority of the property owners who were also owners of a majority of the front footage had not remonstrated, and that the council in its action at that time, acted secretly and fraudulently, and ignored the remonstrance filed July 9th, and that said remonstrances combined, contained the names of about two-thirds of the resident owners. At this point it may be stated that the record of the council shows that the council considered both of said protests. It is alleged

that the council found that there were fifty-eight resident property owners owning property on that part of the street sought to be improved; that of said fifty-eight, twenty-three remonstrated against having the work done, leaving thirty-five in favor of having the work done; that there should have been counted thirty-three property owners as remonstrating, and only twenty-five counted in favor of having the work done by reason of the mistake of law made by the council in allowing withdrawal of said ten persons from the remonstrance.

It is alleged that the statute (Sec. 9255, Laws 1911, p. 340; Sec. 8324, R. S. 1919) which purports to give to the city council the right to pass on the question whether a legal remonstrance has been filed, and gives no opportunity for parties in interest to appear, and which makes the finding of the council final and binding, after the execution of the contract, deprives the protesting property owners of their day in court, and deprives them of their property without due process of law, in violation of Section 30 of Article 2 of the Constitution of Missouri, and in violation of the Fourteenth Amendment of the Constitution of the United States.

The answer further alleges that the resolution published by the council failed to apprise the property owners of the amount of grading to be done on said street, and that the work of grading and paving was done in such an unskillful manner, and that it was of such poor materials, as to make it of no real benefit to the property owners.

The answer further avers that the statute law of Missouri, in that it purports to confer jurisdiction upon the city council by publication in a newspaper only, without notice to defendant, for the purpose of fixing a lien or tax upon the property of defendant, is in violation of the due process clauses of the State and Federal constitutions, and under the latter is an abridgment of the privileges or immunities of defendant as a citizen of the United States.

The reply was a general denial.

II. Defendant objected to the introduction of the tax bill in evidence and urged then, and does now, that it should have stated separately the charges made against defendant's property for excavating, grading, curbing and paving, and that mingling them is a violation of Section 8323, and a violation of the law of liens. It is suggested that Section 8323 enacts different apportionments for grading, paving, curbing and guttering, and that a part of the work was not divisible by frontage only.

Section 8323 has the following provision: ''The cost of grading streets and alleys shall be charged against the lots and tracts of land fronting or abutting on the street or alley, or part of same, so improved, and on the improvement, in proportion to the number of fronting or abutting feet.'' Also the further provision: ''The cost of making curbing . . . shall be charged against the lots and tracts of land fronting or abutting on the improvement in proportion to the fronting or abutting feet, excepting that . . . in making curbing, corner lots shall be charged with the cost of extending the curbing to the curb lines of intersecting streets, and curving and extending the curbing back to the street line at intersecting streets and alleys.''

Said section also has the further provision: ''On the completion of any improvement, in accordance with the contract for same, the city engineer shall compute the cost thereof, and apportion said cost among the tracts of land chargeable therewith, charging each tract of land with its proportionate part of said cost, as herein required, and shall make a written report to the council that the improvement has been completed, in accordance with the contract for same, which report shall also contain a description of each tract of land chargeable with a part of the cost of the improvement, and the amount with which it is chargeable.''

The tax bill in question recites the making of the improvements pursuant to the resolution, and to the ordinance; recites the acceptance of the work by the coun-

cil, and its approval of the report of the engineer, and that in accordance therewith there had been levied the sum mentioned against the certain lot here in question, particularly describing it: "The sum so charged being the proportionate part of the cost of said improvement, as provided by statute." It further recites: ". . . that there are 8,967.31 feet frontage of property abutting on said improvement, and that there are 10,464 feet of improvement between the lines named, and that there are 120 feet frontage in said lot herein described, and that there are 11 feet of curbing extending from curb line to curb line of intersecting streets." It further recited the total cost of the said improvements.

Under the statute quoted, it is made the duty of the city engineer to compute the cost of the improvement and apportion the cost among the tracts chargeable therewith, "charging each tract of land with its proportionate part of said cost as *herein required.*" That is, under this statute, corner lots, in respect to the making and extending of curbing, are to be charged in accordance with the provision that has been quoted.

We think the recitals of the tax bill sufficiently show that this provision of the statute has been complied with.

The section mentioned provides that each tax bill shall, in substance, contain a brief, general statement to the facts authorizing its issue; the amount for which it is issued; a description of the land for which it is issued; the name of the contractor to whom it is issued; the rate of interest and when it begins to bear interest and shall state that it is especially against the land therein described and give the time that the lien continues.

The tax bill in question complies with the provisions of said section. There is no requirement that the tax bill shall state separately the cost of grading, the cost of curbing and the cost of paving, or that a separate tax bill shall be issued for the cost of each of these forms of improvement. It shall be presumed that the report of the engineer as approved by the council, in computing the cost to be charged against the several lots, took into con-

sideration the fact that certain lots were corner lots. The recital in the tax bill that the cost was apportioned, as provided by statute, is sufficient, especially where, as here, there is no claim as a matter of fact, that the apportionment actually did not take into consideration the foregoing requirements as to the making of curbing and its extension at corner lots. The initial resolution published by the council expressly declared that the apportionment of cost should be after the manner indicated.

Section 2 of that resolution is as follows: "The current revenue fund being insufficient to defray the expense of bringing said street to the established grade between said points, and cost thereof, together with the cost of constructing the other improvements herein provided for, will be charged against the lots or tracts of land fronting or abutting on said street along the distance improved in proportion to the number of fronting or abutting feet; except that the corner lots will be charged with the cost of extending the curbing to the curb lines of intersecting street and of extending and curving the curbing back to the street line at intersecting streets and alleys; said cost to be paid in special tax bills levied, assessed and issued againt the abutting property and delivered to the contractor for the work in accordance to law." The ordinances passed subsequently, by express reference to the resolution, carried forward its terms.

In Lexington ex rel. v. Commercial Bank, 130 Mo. App. 687, the validity of the tax bill was assailed on the ground that it constituted a lumping charge which included pay for grading and also for paving. It was held that the inclusion in one assessment of the cost of grading and paving was proper. That decision was founded upon Section 5858, Laws 1901, page 65, which became Section 9254, Revised Statutes 1909. The said section closed as follows: "eleventh, the city council may, by ordinance, include in the special assessment the paving, macadamizing or constructing sidewalks on any street, avenue or alley, the cost of bringing to the established grade said street, avenue or alley or part thereof proposed to be

improved: *Provided,* that the resolution declaring said paving and macadamizing necessary to be done shall also declare that said street, avenue or alley, or part thereof, shall be brought to the established grade, and that the cost thereof shall be included in the special assessment for paying for said paving or macadamizing.''

Recurring now to Section 8323, Revised Statutes 1919, the law under which the council proceeded, we find the following provision: ''Any of said street improvements may be paid for by such city out of the general revenue funds, if the council so desires, but all such improvements shall be paid for with special tax bills, unless the proceedings of the city for same specify that such payment will be made out of the general revenue funds.''

Sections 1 and 2 of the resolution published by the council and which we set out, appear to have been drawn with the statutory provisions of Section 8323 in view. Thereby, property owners were notified that the street was to be brought to the established grade; that the work of grading, paving and curbing was to be treated as one improvement; that tax bills were to be issued against the property for the payment of the cost of the improvement, and that costs were to be charged against corner lots and tax bills issued against them, in accordance with the provisions of the section mentioned.

It is also urged that the tax bill sued on is void on the ground that the resolution published by the council and the ordinances passed and the proceedings had, failed to apprise the property owners of the grade to be established for the street improvement, and McGuire v. Wilson, 187 S. W. (Mo. App.) 612, is cited. Section 1 of the resolution does that.

Section 1 of the initial resolution which was published is as follows: ''That the council deems and hereby declares it necessary to grade, pave and improve Ward Avenue from the northeast property line of Seventh Street to the corporate limits at the Braggadocio Road by bringing the roadway of the same to the established

grade and subgrade and by constructing concrete curbs and gutters combined, to set out beyond the sidewalks; and by paving the roadway from gutter to gutter between said points with Tarvia "X" filled macadam pavement laid on a concrete base except at street and alley intersections where the paving and improvement shall extend from property line to property line; all in accordance with plans and specifications therefor prepared by the city engineer, adopted and approved by the council and now on file with the city clerk for the inspection of the public."

The roadway was to be brought to the "established grade, and subgrade," according to the approved plans and specifications, on file with the city clerk.

III.   The finding that a qualified majority had not protested was made by a resolution adopted at the meeting on July 24th.   Ordinance 275, passed on the same day, was the ordinance establishing the grade in accordance with the plans and profiles made and filed by the city engineer.   By Ordinance 277, also passed on *Protest.* that day, the council found and declared, in the terms of the statute, that a majority had not protested; and that ordinance directed the estimates to be made of costs of grading, paving, surfacing, curbs and gutters. Ordinance No. 278, also passed at the same time, was the ordinance to grade and pave, to adopt plans to provide for letting the contract, and provide that payment should be made by the issuance of tax bills.   This ordinance is not set out in full in the abstract, but there is the statement in the record that no point was made on the sufficiency of said ordinance as to the points covered thereby, if the city had complied with the law so as to give it the power to make such contract.   On this account, and also from what has been said of the nature of the proceedings as shown by these ordinances, they cannot be held insufficient under the point here raised.   The resolution and ordinances by recital and character formed a definite and connected plan.

IV.   It is urged that the resolution was defective because it did not show the amount of excavating necessary to be done, so that the property owners could intelligently understand the nature of the work proposed, and under this contention, Delmar Investment Co. v. Lewis, 271 Mo. 317, is cited. We have set out the first section of the resolution. The decision in the Lewis case sets out the resolution there condemned. It had reference to a statute governing cities of the fourth class. The resolution here is not subject to the defects there pointed out. The requirements of the statute upon this subject governing cities of the third class after the amendments made in 1901, are pointed out in Lexington ex rel. v. Commercial Bank, 130 Mo. App. 687. We rule the point against defendant.

**Necessary Excavation.**

V.   The defendant put in evidence the resolution and proof of its publication; the record and certain files of the council; the various ordinances; the fact that no notice was given to the remonstrators of the special meeting held on July 24th; the protests of property owners, and the withdrawals filed on the 23d of July; testimony as to the residence or non-residence of owners of property affected by the improvements, or who signed the protests, and other circumstances; and also testimony concerning the condition of the street after the completion and acceptance of the work by the city.

**Protests.**

The evidence in the record conclusively shows, and it is not disputed here, that if the withdrawals of the property owners, filed on July 23d, were permissible, then there was not left a majority protesting against the improvement. Upon the hearing on appeal, counsel for plaintiff took leave to amend their statement of facts and did amend it, making therein the contention that regardless of the validity of the withdrawals there was less than a majority protesting, and to that contention counsel for defendant have filed a reply which is an admission

that out of fifty-eight resident owners, there were twenty-three remonstrators, leaving thirty-five not protesting, if those withdrawing be taken into account, but otherwise, maintaining that upon the evidence in the record there was a majority protesting.

Certain of the instructions given for plaintiff covering the question of the council's right to proceed may be here summarized. The court instructed the jury that the law under which the council proceeded was valid and constitutional; that the finding of the city council that a majority of the resident property owners owning a majority of the front footage did not remonstrate, was conclusive; that the withdrawals were duly filed within the time required by law, and the resident owners signing them should be counted as being in favor of the improvement; that the resolutions, ordinances and minutes of the council were duly passed, and that there was no evidence of fraud on the part of the council in their making; that the council was not required to give notice to the property owners of its meeting held on July 24th, and said meeting was lawfully held and the council had authority thereat to pass on the matters before it respecting the street paving in question; that the resolution was not insufficient in that it failed to apprise the property owners of the amount of grading to be done, or otherwise; and that its publication in the Twice-a-Week Democrat met all the requirements of the law applicable to the case.

Out of the matters foregoing arise the principal questions by counsel for defendant.

VI. At the outset there is the contention of defendant that the statute making the finding of the council conclusive is in violation of defendant's rights under the Fourteenth Amendment to the Federal Constitution, and that it is not due process of law (under any constitution) in reference to the taxing power; with Findings of the further contention that if the statute be Legislative Council. sustainable in any aspect, it should in its application to this case, be held as violative of the Fourteenth Amendment, for the reason that the

council denied to the remonstrating property owners any opportunity to be heard upon or at the "finding" made.

Counter to this is the contention of plaintiff that the constitutional questions raised have been finally settled against defendant's contention, and cannot be relitigated here so as to confer jurisdiction upon this court.

Upon defendant's first contention counsel have cited State ex rel. v. Atkinson, 271 Mo. 28; Cook v. Hacklemann, 45 Mo. 317; Ewart v. Davis, 76 Mo. 129. In Atkinson's case the finding under consideration was one made by the Public Service Commission, an administrative body. The two others were cases involving the effect of recitals contained in deeds executed under sales of property, made in invitum. In Cook's case the sale was made under a distress warrant of the State Auditor, and in Ewart's case the deed was a tax deed and under a statute making its recitals prima-facie evidence, but, a case where no judgment was shown, and the prima-facie force of the recitals was destroyed for lack of compliance with an express requirement of the statute. But, the opinion refers to Abbott v. Lindenbower, 42 Mo. 162, where it was held that the Legislature had no constitutional power to make such deeds conclusive evidence to such an extent as to cut off all inquiry as to whether steps vitally essential to the exercise of the taxing power had been taken.

The question of the validity of a provision of a city charter making a finding conclusive was before this court in Findley-Kehl Investment Co. v. O'Connor, 256 S. W. 798, under a provision of the charter of Kansas City, making the finding of the Board of Public Works conclusive upon the question whether there was a legal remonstrance against a proposed street improvement. The determination of the main question in the case turned upon the distinction between the finding made by an administrative board, and the finding made by a legislative body. It was said, at page 800: "The framers of the charter could not make the findings of the Board of Public Works conclusive and final upon the fact of there

being no legal remonstrance. Such a board is not a court so as to make its findings *res adjudicata*. Neither is it a legislative body, so as to make its findings binding. It is a mere administrative board upon which no such power could be granted without doing violence to both State and Federal constitutions. . . . The legislative branch of a State or city government is one of the majesties of the State or municipality, but not so in case of boards of public works, or public service commissions.''

Recurring to the same subject it was further said in the opinion, at page 801: ''In addition to what we have said in Paragraph 1, supra, it must be said that the courts of appeals under statutes (which statutes are the charters of divers cities in the State), making the finding of the city council conclusive upon the fact of the failure to file a sufficient remonstrance, have ruled that such may be granted, but that such statute would not cover a finding upon the pure legal question as to whether or not the remonstrance was filed in time. [Rhodes v. Koch, 189 Mo. App. 371, 176 S. W. 286; Hinerman v. Williams, 205 Mo. App. 371, 224 S. W. 1017; City of Sedalia v. Montgomery, 109 Mo. App. l. c. 211, 88 S. W. 1014; Id., 227 Mo. l. c. 18, 127 S. W. 50; Fruin-Bambrick Construction Co. v. Geist, 37 Mo. App. 514; Hoover v. Newton, 193 S. W. (Mo. App.) l. c. 896, 897.] The Rhodes-Koch case was before this court upon *certiorari;* and we declined to quash the record. [State ex rel. v. Farrington, 195 S. W. l. c. 1044.]''

In the case at bar an important question is whether the withdrawal of the ten property owners was filed in time. That was not a question of fact under the record in this case, but a pure question of law, upon facts undisputed at the trial, and resting in the files and records of the council.

A city council is a legislative body. The law-making power of a municipality is not a delegation of power from a law-making body of the State in the meaning of the Constitution forbidding delegation of legislative pow-

er. The nature of this is stated in 12 Corpus Juris, 859, 860: "In general the Legislature may delegate to municipal corporations, and to proper officers of such corporations, all powers incident to municipal government, whether legislative or otherwise, without violating the rule against a delegation by the Legislature of its law-making power." [Metcalf v. City of St. Louis, 11 Mo. l. c. 105; Haeussler Investment Co. v. Bates, 267 S. W. 632, 635; State ex rel. Lashly v. Becker (concurring o-pinion of J. T. BLAIR), 290 Mo. 633.]

In State ex rel. Kelly v. Hackmann, 275 Mo. 636, it was said in the opinion by GOODE, Special Judge, l. c. 646: "In cases where the courts have reserved the right to make an independent finding of facts when the constitutionality of a statute turned upon a question of fact, the prior finding of the Legislature was treated as prima-facie true. [N. Pac. Ry. v. N. Dakota, 216 U. S. 579; Judson, Interstate Commerce (3 Ed.) p. 224.] And there is abundant authority in this State and elsewhere for holding that a finding by the Legislature of the existence of a fact upon which the right to enact a law depended, is not to be further inquired of by the courts. [Ex parte Renfrow, 112 Mo. 591; and cases cited in opinion.] So we will take it as true that an agreement was made between the State and relators under which their claim arose. We should presume, too, that the Legislature passed upon the validity of the agreement before making the appropriation in controversy. Nevertheless, that question remains judicial, the legislative decision being so far respected that the act passed to pay the claim based on the contract, will be upheld by the court, unless deemed to be a clear violation of the Constitution."

In respect to the power of the city council under the provisions of the statute (Sec. 8324, R. S. 1919) to make the finding here in issue, there are certain conditions or limitations. The resolution duly framed and adopted, and duly published, is notice to all property owners affected. Thereupon, after the lapse of ten days, the council has the power to proceed, if a majority of those quali-

fied to do so shall not within ten days after the date of the last publication, file their protest with the city clerk. But, the right of withdrawal of such protest exists during, but not after, such period of ten days. "It was not necessary that the statute should give the right to withdraw. This right the law gives petitioners, unless prohibited by the statute." [Sedalia v. Montgomery, 227 Mo. 1. c. 26.] In this case the question whether the manner and time of the publication of the resolution was a compliance with the conditions prescribed by the statute, and dependent upon that, what was the date when the ten-day period began to run, were questions of law to be determined upon undisputed facts. For the same reason, the question whether the withdrawals of the ten property owners who had theretofore signed protests were made in time, was a question of law, upon facts not in dispute, and upon a record made by the council itself.

VII. Following what has been said in the preceding paragraph, it is necessary to consider the validity of the publication of the resolution passed on July 2nd, and the question whether the date of the last Publication publication, July 13th, was the date from in Twice-a-Week Paper. and after which the ten days began to run, within which period, property owners might file protests, or, having theretofore filed protests, might file a withdrawal. The defendant urges that the publication was invalid, and that in any event the time within which withdrawals from the protest could be made, could not be extended, or computed to be within the period of ten days after July 13th, the date of the last of the four consecutive insertions in the twice-a-week newspaper. It is argued that if the publication had been in a weekly newspaper and the first insertion had been on July 3d, the next and last would have been on July 10th, and the ten-day period would be computed from that date. Section 3 of the resolution required its

publication in four consecutive issues of the twice-a-week paper.

The provision of the statute then in force (Sec. 8324, R. S. 1919) is, that the resolution is to be "published in some newspaper printed and published in the city, for two consecutive insertions in a weekly paper, or seven consecutive insertions in a daily paper." The further provision as to the protest is that if the requisite majority of the property owners "shall not within ten days after the date of the last publication file" their protest, the council shall have power to proceed.

Counsel for defendant have cited Russell v. Croy, 164 Mo. 69, and numerous cases from other jurisdictions upon the meaning of the words "weekly newspaper;" and cases in this, and other jurisdictions holding that the law regulating constructive service as a means of acquiring jurisdiction, is to be strictly complied with. [Webb v. Strobach, 143 Mo. App. 459; Stanton v. Thompson, 234 Mo. 7.; Otis v. Epperson, 88 Mo. 1. c. 134; Chilton v. Hedges, 204 S. W. 900.] And also urge that where a notice is given by publication, and the statute prescribes the way it shall be given, a substitute which may seem just as good will not suffice, citing under this, State v. Dobbins, 116 Mo. App. 29; Williams v. Ettenson, 178 Mo. App. 178.; Russell v. Croy, 164 Mo. 69.

This statute, and the sufficiency of a publication in the same newspaper, and insertion therein upon the identical dates herein involved, were considered by the Springfield Court of Appeals in Hinerman v. Williams, 205 Mo. App. 364. After a discussion of the statute and of numerous cases, none of which, it was said, ruled directly on the point involved, it was held that the publication was a compliance with the statute. It must be said that the ruling there goes as far as is permissible in such cases. The question of whether certain withdrawals from the protest came too late appears to have been raised in that case; but, the question whether the statutory period of ten days "after the date of the last publication" could begin on July 13th, or, more than one

week after the date of the first publication, as it would be if the publication were in a weekly paper by two consecutive insertions, is not specifically mentioned as being ruled upon. The date of the filing of the withdrawals which were claimed to have come too late, is not stated in the opinion. But, we think the ruling cannot be construed otherwise than as holding that the date of the last publication in the meaning of the statute was July 13th. In that case it was said that the whole field of fact was gone over in the trial court. In this case also the facts as to ownership of property, and whether the owners were residents or non-residents, was gone into. It was held that under the record and under the statute, the finding of the council was conclusive. Adopting as we do the conclusion there reached that the publication was a compliance with the statute, we hold that the withdrawals were filed in time, and under that view and upon the facts, the finding of the council that there was not a majority remonstrance, is conclusive.

VIII. It is urged that the tax bill should be held void because the property owners were given no opportunity to be heard; that the finding was made at a special, or called meeting of the council, and no notice thereof was given to the property owners.

Special Meeting.

The statute makes no provision fixing the time of regular meetings of the council of cities of the third class. Under the general ordinances of the city the regular meeting time was on the first Monday evening of each month, and the general ordinance provided for special meetings upon call by the mayor or by two members of the council. The record of the council showed seven of the eight members of the council present at the special meeting, held on the morning of July 24, and called by the mayor. The purpose of the meeting was set forth in the record of the council, and recited that it was held pursuant to the call of the mayor. The record made on the minutes did not copy therein the call and notice given

to the members, but there was introduced in evidence on the trial the call and notice served by the city marshal upon the only member who was not present at the meeting. It must be presumed that the seven members who were present, were so, pursuant to the call mentioned, and for the purpose set forth in the record made by them.

The statute, as has been said already, makes no provision regulating the time of council meetings, either regular or special, but that special meetings may be held cannot be questioned. There is no provision prohibiting such, and by implication the right exists. [Sec. 8227, R. S. 1919; Dillon on Municipal Corporations (5 Ed.) sec. 533; Savings Bank v. Ridge, 183 Mo. 506.] "Unless otherwise provided by a charter or statute the action of the council, with regard to an improvement, may be taken at a special, as well as at a general, meeting." [28 Cyc. p. 994; also 28 Cyc. pp. 327, 329.]

Somewhat germane to the foregoing, the defendant urges that the council, in called session, acted in defiance of Section 8384, in reading the ordinance three times and passing it at that meeting. That section is a part of Article 5, of the Chapter on Municipal Corporations, concerning cities adopting the alternative form of government, and requires ordinances for street improvements and certain other purposes after reaching their completed form for passage shall remain on file for inspection for at least one week before final passage. No such provision is found in the statute governing ordinary cities of the third class. The only limitation in Article 4, governing cities of the third class, upon the subject, is Section 8287. The pertinent provision there found is: "No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the council shall vote therefor, and the ayes and nays shall be entered on the journal; and all bills shall be read three times before their passage." Under the ruling in Water Co. v. Aurora, 129 Mo. 540, and the authorities there cited, and in consideration of there being no provision

in the charter of a city of the third class forbidding or regulating special meetings of the council, or, otherwise than as in Section 8284, prescribing the conditions to be complied with in passing ordinances, it must be held that there was no authority forbidding the council passing the ordinances at the special meeting. It is not contended that the record fails to show the bill was read the first, second and third time, nor, that a majority of the members of the council did not vote therefor, nor that the ayes and nays were not entered upon the journal. The record showed compliance with those requirements. There being no statute forbidding the passage of the ordinance at a special meeting, the right to do so existed.

IX. It is urged that the right of the property owners to be heard was denied. There is no evidence that any property owner asked for a hearing upon the question of the legal sufficiency of the protest, or upon any other question. The statute governing cities of the third class, Article 4 of Chapter 72, makes no requirement of that kind. The failure so to provide and the fact that notice was not given to property owners of the meeting held on July 24, cannot be held to deny to them a constitutional right, in view of the holding that a statute which authorizes the council to make improvements of this character without a petition from the property owners and without granting right to protest, is not violative of the State or Federal Constitution. [Buchan v. Broadwell, 88 Mo. 31; Miners' Bank v. Clark, 252 Mo. 20; Brougham v. Kansas City, 263 Fed. 115; Field v. Barber Asphalt Co., 194 U. S. 618.]

*Right to be Heard.*

Nor is what was said in Gist v. Construction Company, 224 Mo. 369, cited by defendant, in conflict with what we have said. What was there said had reference to an improvement initiated by the Board of Public Works of the City of St. Joseph under a charter provision requiring notice and a hearing. This is further shown by the cases there cited: Naylor v. Harrisonville, 207

Mo. l. c. 353; Springfield to use v. Weaver, 137 Mo. 650; Meier v. St. Louis, 180 Mo. l. c. 409.

It is urged that before the city can proceed with the work of improvement it must duly and legally pass ordinances, and not resolutions. This must be conceded, as to proceedings subsequent to the resolution declaring the improvement necessary. In this case all steps following the preliminary resolution were taken under ordinances, passed by the council, and not by resolutions.

X. The defendant urges that Instruction No. 2A given for plaintiff was erroneous. This was the instruction which told the jury, that, upon the issue whether a majority of the resident property owners owning a majority of the front footage had remonstrated, the finding of the council that such majority did not remonstrate, was conclusive, and upon that issue the finding of the jury must be for plaintiff. It is contended that there was at least a question of fact relative to the remonstrances filed, to be determined by the jury, under proper instructions. But, under defendant's evidence and upon the whole record, it is clear, that, if the withdrawals were filed in time, there was not a sufficient remonstrance. It is not contended here that there was a remonstrance by a majority, except by disregarding the withdrawals. There is discussion here under the amended statement of facts made by counsel for plaintiff, and in the reply brief of defendant, upon the question whether, if the withdrawals be left out of account, there was a majority protesting; but, we have held that the withdrawals were properly taken into consideration by the council in making the finding. That being so, and there being no room for doubt under the evidence that there was not then left a majority protesting, the instruction did no more than to declare that the council in taking into account the withdrawals did not err as a matter of law, and to give conclusive force to their finding of fact.

*Instruction: Finding of Council.*

XI. The defendant assigns error upon the ground that the court refused to permit defendant to show the existence of defects in the paving soon after the street was open to the public. We think the point is not well taken. The court excluded the testimony of the witness Kirkpatrick, a farmer living three or four miles out of the city, who testified he had been over the street numerous times after it was open, upon plaintiff's objection that the answer did not allege any particular defect or insufficiency in the street, and also that the question was not aimed at the time of the completion of the work. But, immediately afterward, the court changed his ruling and permitted defendant to show by several witnesses what they saw as to holes, or water standing in the street. This inquiry covered a somewhat indefinite period. Some of the witnesses did not undertake to say how soon it was after the completion of the street; others thought it was six or eight months. At any rate defendant was given the benefit of the testimony of this character, which was somewhat indefinite, as to the time the observations were made, and the character of the defects.

*Defects.*

C. S. Reynolds, a civil engineer, was permitted to testify, over plaintiff's objection, that at a time about three years after the completion of the improvement he found that the level of the pavement was in some places two-tenths of a foot lower and in other places one-tenth of a foot higher than the level or grade fixed by the profile in the office of the city clerk. We conclude that upon this and the other questions raised, no reversible error was committed against the defendant.

XII. Plaintiff has also assigned certain errors. Complaint is made of the court's refusal to give plaintiff's Instruction A, which was a peremptory instruction to find for plaintiff in the sum of $457.59, the sum named in tax bill, with interest. We find in the record no evidence tending in a direct way to show that the materials used in the im-

*Peremptory Instruction.*

provement were not in accordance with the specifications. There is some evidence of holes or irregularities in the surface of the street, but mainly at a time some months after it was in use. There was also testimony that it was the most used street in the city, and that there was much heavy traffic over it of trucks and other vehicles. We have reached the conclusion that the trial court did not err in refusing the peremptory instruction.

XIII. Another error assigned, and the one most urged here by plaintiff, is the giving of Instruction 9B for defendant. The instruction told the jury that should they "find for plaintiff on the other instructions, then it was claimed on the part of the defendant that the work of paving was not done according to contract and was put down in such unskillful manner and out of such poor materials, and such negligent and unworkmanlike manner as to make it practically worthless and of no real benefits;" and the court instructed the jury in that connection that if they should find "from the evidence that said work was not done in substantial compliance with the contract," and should find for the plaintiff they "should only allow such sum as all the evidence showed to be reasonable value of the work done in the manner in which it was performed."

Plaintiff's objection is that the instruction furnishes the jury no sufficient guide.

Plaintiff's Instruction 1A, after instructing the jury as to the prima-facie force of the tax bill as evidence, further instructed the jury that before they were warranted in finding for defendant on the ground that the work was not done according to the plans, specifications and the contract, they must find from the greater weight of the evidence that there was a substantial variation from the contract, plans and specifications for said work, and unless they so found their verdict should be for the plaintiff. Counsel for plaintiff contend that defendant's said Instruction 9B left the jury at liberty to find against plaintiff, and reduce the tax bill as for

breach of the contract, if this contract was not complied with in any particular, whether the same was pleaded or not, or upon some ground about which there was no evidence. Upon the effect and relation of these two instructions, that defendant's Instruction 9B was error for the reason above indicated, and that plaintiff's Instruction A1 did not make the error common to both sides, counsel for plaintiff have cited the ruling of the Kansas City Court of Appeals in City of Weston v. Chastain, 234 S. W. l. c. 352. The instruction given for the defendant and condemned in that case was one telling the jury their verdict should be for the defendant if they found from the evidence that the work was "not done substantially according to the terms of the contract, plans, and specifications."

It was there said: "The effect of it was to refer the jury, without guidance or direction, to the plans and specifications, and have them construe the same and determine whether the contract was complied with, which, under such situation, would be a legal conclusion." Here the instruction of which plaintiff complains does not contain an authorization, or condition upon which the jury should find for defendant, but submits the hypothesis that if the jury find that the work was not done in substantial compliance with the contract, and should find for plaintiff, they should allow only for the reasonable value of the work done in the manner it was done. There was no testimony given or offered which gave the jury any estimate or guide as to the reasonable value of what was done, or, as to deviation from the plans and specifications other than that of the character we have referred to. The instruction referred the jury to the contract for what was to be done, without more, and referred to them the question whether what was done was a substantial compliance with the contract, as matters to be determined by them. The instruction left it to the jury to determine the terms of the contract, and also the particulars wherein there was a failure, if any, to comply with

it. It was objectionable, under the ruling in city of Weston v. Chastain, supra, and the authorities there cited.

The judgment should be reversed and the cause remanded for further proceedings in accordance with the views herein expressed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. *Ragland, P. J.,* and *Graves* and *Woodson, JJ.,* concur; *Atwood, J.,* not sitting.