THE CITY OF SEDALIA ex rel. GILSONITE CON-STRUCTION COMPANY, Plaintiff in Error, v. JENNIE R. SCOTT, Defendant in Error.

**Kansas City Court of Appeals, January 4, 1904.**

1. **TAXBILLS: Jurisdiction of Council: Remonstrators.** When a majority of property owners abutting on a street sought to be improved sign and file a remonstrance with the city clerk, it ousts the council of jurisdiction; and the withdrawal therefrom of remonstrators can not reconfer jurisdiction. To make the taxbill issued for such improvement valid new proceedings should be begun. Following Knopfi v. Roofing & Paving Co., 92 Mo. App. 279.

2. ———: ———: ———: **Record.** A remonstrance against a street improvement, and the written withdrawal therefrom, and the report of the committee to which these were referred constitute a part of the record of the city council.

3. ———: ———: ———: ———. On a review of the record it is found that a majority of the property owners remonstrated, and the attempted subsequent withdrawal of a part of said remonstrators was non-effective, since the remonstrance had already completed and fulfilled its purpose.

4. ———: ———: ———: ———: **Parol Evidence.** Where the record of a city council in a proceeding for a public improvement at the expense of the property of a citizen without his consent fails to show the council had jurisdiction, the action taken under such record is void and can not be validated by parol testimony.

5. ——: ——: ——: ——: ——: Administrator. On a review of the record it appears that no name signed by an administrator was counted in making up the total number of remonstrators, and it was proper to refuse evidence tending either to contradict the record or to supplement it in such a vital particular.

6. ——: ——: ——: ——: ——: ——. The marks and figures on a remonstrance are reviewed and held insufficient to show that an administrator was counted as a remonstrator; however, in such case the record must control and can not be contradicted by surmise or conjecture or eked out by parol evidence.

7. ——: ——: ——: ——: ——: Principal and Agent. That certain associations and corporations signed a remonstrance by their chief officer is sufficient, and it can not be shown that the signatures were attached without authority from the board of directors.

8. ——: ——: ——: ——: ——. While the record of a municipality may be attacked by parol evidence in behalf of a citizen whose property is taken or taxed *in invitum.* Yet such record can not be questioned by the city in any particular since that is tantamount to holding that no record is necessary.

9. ——: ——: ——: ——: ——: Parliamentary Manual. An objection that the council in receiving a report had not conformed to the parliamentary manual adopted to govern its proceedings is held, not well taken and such bodies are not bound to act in accordance with their rules or by-laws as they may, and oftener than otherwise do, waive them.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* and *Montgomery & Montgomery* for plaintiff in error.

(1)   A paper produced from the files of the city clerk, and purporting to be a remonstrance against a street improvement, and purporting to be signed by forty-three persons, does not prove itself, and is not competent evidence that the persons whose names ap-

pear thereon ever signed the paper or authorized any other person to sign for them; and is not competent evidence that such persons own property abutting upon the street improved and liable to taxation therefor; and is not competent evidence that such persons reside in the city; and is not evidence that such persons constitute a majority of the resident owners of property abutting on the street improved and liable to taxation therefor. (2) The record of the council is the journal of the council proceedings which the clerk is required by law to keep. This journal should contain a minute of every act of the council. R. S. 1899, secs. 5772 and 5774. (3) In so far as it does so it is competent proof and the only competent proof of what the council did. It will be conclusively presumed that the council did just what its journal says it did, no more and no less. (4) The council had power to adopt its own rules of parliamentary procedure. R. S. 1899, sec. 5772. Such power exists independently of the statute and inheres in every deliberative body. (5) Pursuant to such power, it adopted Cushing's Manual as its parliamentary guide. Therefore, all parliamentary terms must be construed to mean what Cushing's Manual defines them to mean. (6) When any proposition is made to a deliberative assembly, it is called a motion: when it is stated or propounded to the assembly for their acceptance or rejection, it is denominated a question: and when adopted, it becomes an order, resolution, or vote of the assembly. (7) The first question upon a report, is upon receiving it. The adoption of a resolution to receive the report, means that the council (1) consents to hear the report read (2) discharges the committee, and (3) places the report upon the table until it sees fit to take it up for further consideration, if ever. The council may never consider the report again. It may wholly ignore it. Cushing's Manual, secs. 287, 290. (8) The final question on a report, is upon its adoption or acceptance. When accepted or adopted the statement, reason-

ing, opinion, resolution or other act becomes the statement, reasoning, opinion, resolution or other act of the assembly as the case may be. This is done by resolution. Cushing's Manual, sec. 295. (9) The word "find," as applied to the council's action, means that the council is satisfied and determines from the evidence adduced, and declares that a certain fact under investigation exists. State v. Beloit, 74 Wis. 267. (10) An administrator as such has no right to sign a remonstrance for his decedent. John N. Dalby, administrator of the estate of Mary A. Hogue, should not have been counted. Mulligan v. Smith, 59 Cal. l. c. 225; Rector v. Board, 50 Ark. 116; Holland v. Baltimore, 11 Md. 186; Batty v. Hastings, 63 Neb. 26. (11) A conveyance to S. Wright & Son passes the legal title to S. Wright. Hence S. Wright & Son should not have been counted as two remonstrants. Arthur v. Weston, 22 Mo. 378. (12) Thus the record of the council shows that the committee's finding, that a majority did not remonstrate, was correct.

*Barnett & Barnett* for defendant in error.

(1) This court has already settled the question that the ordinance involved in this case and the taxbills issued thereunder are absolutely void. Every contention made by the plaintiff in error in this case has been decided adversely to it. Knopfi v. Gilsonite Roofing & Paving Co., 92 Mo. App. 279. (2) The act of the council referring the remonstrance to a committee for investigation, the report of the committee received and filed to the effect that there were sixty-one resident property owners and thirty-two had signed the remonstrance and that the committee found that the remonstrance had been reduced below a majority by withdrawals, and, further, the fact that thereupon at the same meeting, without further investigation, the ordinance was introduced and put upon its passage consti-

tutes an adoption by the council of said report, and a finding that thirty-two of the sixty-one had signed the remonstrance and constitutes an adoption by said council of the views expressed by the city counselor to the effect that the council had acquired jurisdiction by reason of these withdrawals. Knopfi v. Gilsonite Roofing & Paving Co., supra, local citation, pp. 291 to 294. (3) It being ascertained that there were but sixty-one resident property owners on the street and that the remonstrance contained the names of thirty-two persons competent to remonstrate, of course the remonstrance contained a majority, even rejecting the name of Fannie Hartshorn. (4) While the defendant in this case could attack and show that notwithstanding its recital the city in fact did not have jurisdiction to proceed, yet neither the city nor the contractor holding under it can assail the record. The record itself must disclose jurisdiction in the council and authority to make the improvement. Therefore the court did right in excluding the offer to show that certain parties signing the remonstrance were not competent to do so. Knopfi v. Gilsonite Roofing & Paving Co., supra, pp. 291 to 294. (5) The council could not acquire jurisdiction by the withdrawal of names from the remonstrance filed, as the filing of the remonstrance with a majority of the property owners signed thereto deprived the council of jurisdiction to proceed without regard to the subsequent action of the remonstrators. This question is settled in the Knopfi case.

ELLISON, J.—This is an action based on a special taxbill for street paving in the city of Sedalia. The bill is one of a number of others issued against the property of different property owners abutting on the improvement. One of these property owners brought a suit in equity to declare void the bill issued against his property. In that case, on appeal to this court, it was decided that the bill was invalid. Knopfi v. Roofing &

Paving Co., 92 Mo. App. 279. Suit in this and sixteen other cases was brought at law against other property owners by the holder of the taxbills for the same improvement. The trial court found that a majority of the property owners on the street to be improved filed with the city clerk their remonstrance against the improvement within ten days of the publication of the resolution proposing the work and rendered judgment for defendant. The plaintiff brought each case here by writ of error. They are all submitted on the briefs in this one and are to abide the result reached in this one.

1. The record now before us is in most respects identical with that in the Knopfi case and the opinion in that case has not been questioned by counsel, though other and additional points have been set out and urged to sustain the validity of the tax.

As stated in the Knopfi case, it is provided by the laws of 1893, section 110, page 92, that when the council shall deem it necessary to pave or otherwise improve a street for which a special taxbill is to be issued, ". . . they shall by resolution declare such work or improvements necessary to be done, and cause such resolution to be published in some newspaper published in the city, for two consecutive weeks; and if a majority of the resident owners of the property liable to taxation therefor shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power to cause such improvements to be made, and to contract therefor, and to levy the tax as herein provided. . . ."

A resolution was passed and published looking to the paving in question, and within ten days a majority of the resident owners of party liable to be taxed filed with the city clerk their remonstrance against the improvement. Afterwards, but within ten days of the publication, a sufficient number of those signing and filing the remonstrance withdrew therefrom to reduce the number remaining below a majority. We decided in

City of Sedalia ex rel. v. Scott.

that case that when a majority of property owners signed a remonstrance and filed it with the city clerk it ousted the council of jurisdiction, and that after signing and filing with the clerk, a portion of the signers. could not withdraw therefrom so as to reconfer jurisdiction.    And that if it was still desired to make the improvement a new proceeding should be begun.

2.    We regard the papers known as the remonstrance and the written withdrawals therefrom and the report of the committee  to which these were referred as parts of the record of the city council.    From these it appears that there were sixty-one property owners and that forty-three signed the remonstrance.    That of the latter, one signed and filed a withdrawal from the remonstrance several days before it was filed with the city clerk, and six others (making seven in all) signed and filed their withdrawal the next day after it was filed with the clerk. The record, however, further shows that the committee must have determined that only five of the seven were competent to be counted as withdrawing, for only five were reported. This was probably from the. fact that it determined that two were not proper remonstrants and not being persons who could remonstrate in the first instance, of course, could not withdraw. The committe cut out eleven of those signing the remonstrance, thereby reducing the number to thirty-two proper remonstrants in the opinion of the committee. From these it subtracted five as having withdrawn, leaving in the opinion of the committee only twenty-seven remonstrants.

We readily concede that a remonstrant may withdraw from the remonstrance before it is filed.    For till then it is not an effective paper, since it has not been delivered (so to speak) by filing with the clerk of the council.    So therefore when the one property owner withdrew her protest before the paper was filed, it reduced the qualified remonstrants as found by the committee to. thirty-one.    But the subsequent withdrawal of the four

others did not affect the remonstrance, leaving it still numbering thirty-one, and that being a majority of the sixty-one property owners, it left the council without jurisdiction and consequently its subsequent issue of the taxbills in controversy was unauthorized act and such bills are void; unless such action is validated by the following considerations based upon the records of the council which have been urged upon us by plaintiff.

3. It is shown by the record of the council that the remonstrance and the withdrawals therefrom were, by the council "referred to the city counselor, the street and alley committee and the city engineer for investigation." These officials afterwards (as above stated) made report to the council in which they stated that they had been guided by the city attorney in determining who were qualified to sign the remonstrance and when they might withdraw therefrom, viz.: "The names of parties competent to be counted for or against the paving have been determined upon the advice of the city counselor as is shown in the attached letter from him." The part of the attorney's letter which is pertinent to present inquiry is as follows:

"You submitted the following questions of law for my decision, connected with the matter of the contemplated paving of Sixth street, from Lamine avenue to the west line of Grand avenue . . . 2nd. Can a person who has signed a remonstrance change the effect of such signing so as to be counted for instead of against the pavement when the change is made in the form of a written request, signed and filed before the time for remonstrance expires? 3rd. Can the administrator of an estate sign a remonstrance, or be counted when the estate owns land on the street? . . .

"2nd. It is my opinion that when a person has signed a remonstrance and before the time expires for the protest to be filed, directs his name to be withdrawn, and does this in writing, with his name signed thereto,

he should not be counted as remonstrating, and may be legally counted as in favor of the improvement.

"3rd. An administrator of an estate can not sign a remonstrance or be counted as in favor of the pavement, so as to affect the owners. The lands of a deceased person always descend directly to the heirs, and never is taken charge of by the administrator, except for the payment of debts of the estate. No personal judgment could be rendered against the estate for the cost of the paving. The land alone is liable and the heirs are the owners, and residents must be counted."

The record of the council then shows that at a meeting of the council, "On motion of Rickman, it was seconded and carried, the report be received and placed on file." That thereupon, at the same meeting, the ordinance providing for the improvement in question was put in course of passage by being read the first time and then immediately by a suspension of the rules "placed on its second reading and read the second time." Afterwards, at the first meeting of the council when a quorum was present, the ordinance was read "the third time" and then on suspension of rules was immediately duly passed.

It is thus seen that the report of the committee, including the city attorney, found that there were sixty-one resident property owners, that of these there were thirty-two competent to remonstrate who did remonstrate; but that five of them had withdrawn from the remonstrance. To repeat again, the remonstrance was signed by forty-three persons and the withdrawals were signed by seven of these. But the committee in ascertaining who were the proper remonstrants and acting under the advice of the attorney, as to who was a resident owner of property, and as to whether an administrator could remonstrate for the estate he represented, found that there were sixty-one resident property owners and that of the number signing the remonstrance there were thirty-two competent, and that of

these five had withdrawn from the remonstrance, the two others signing the withdrawal, evidently not having been counted as remonstrants, were not counted as withdrawing. Thus under this report, the council on the basis of sixty-one resident property owners and thirty-two remonstrants, less five withdrawals, which, if effective, reduced the remonstrants to less than a majority, proceeded to pass the ordinance. If therefore, there were not enough withdrawals to reduce the thirty-two competent remonstrants to less than a majority of the sixty-one property owners, the council was clearly without authority to pass the ordinance. Of these five, one withdrew before the remonstrance was completed and filed. We have already said that such withdrawal was effective. But the withdrawal of the other four was non-effective, since the remonstrance had already completed and fulfilled its purpose. It follows that plaintiff's point based on this view of the record is not well taken.

4. But plaintiff endeavored to show by a witness that the committee counted as one of the thirty-two remonstrants the estate of Mary A. Hogue which was signed to the remonstrance as "Mary A. Hogue by J. N. Dalby, admr." This offer of the proof was made on the idea that if such signature was not competent as signed to the remonstrance it showed that there were but thirty-one remonstrants. From which it stands conceded that there was one withdrawal made before the remonstrance was filed thus (under this idea) reducing the number to thirty, which was less than a majority. The court refused the offer. The refusal was proper.

If the record of a city council in proceedings for public improvements at the expense of the property of the citizen without his consent fails to show that the council had jurisdiction, the action taken under such record is void and can not be validated by oral testimony. 2 Dillon on Munic. Corp., sec. 800; Ogden City

v. Armstrong, 168 U. S. 224; Miller v. Amsterdam, 149 N. Y. 228; Property owners are not parties to the contract for such improvements. The proceedings as to them are *in invitum* and their property is not affected unless it is brought within the strict meaning of the statute. Thornton v. City of Clinton, 148 Mo. 1. c. 663. And as we said in the Knopfi case, this has been the rule in this State in kindred matters. Whitely v. Platte Co., 73 Mo. 30; Zimmerman v. Snowden, 88 Mo. 218; Chicago Ry. Co. v. Young, 96 Mo. 39.

5. But plaintiff does not stand on the mere refusal to hear such oral testimony. Plaintiff further urges that the record itself shows that one of the thirty-two remonstrants counted by the committee was the estate of Mary A. Hogue signed by the administrator. That the administrator had no authority to sign and that therefore the record itself shows there was only thirty-one competent remonstrants, and one withdrawal conceded to be valid reduced the number below a majority. But the record does not sustain plaintiff's position. The report of the committee, as above set out, shows that there were thirty-two remonstrants which, the report says, were counted as ascertained under the written guidance of the city attorney. The attorney's directions (as shown by the report) were that a name signed by an administrator was an unauthorized signature and could not be counted as a remonstrant. It therefore appears of record that no name signed by an administrator was counted in making up the total number of thirty-two remonstrants. It was therefore proper, under the authorities aforesaid, to refuse evidence tending either to contradict the record or to supplement it in such vital particular.

6. It is true that on the original remonstrance as filed with the city clerk there appears among the signers thereto the signature, already referred to, viz., "Mary A. Hogue by J. N. Dalby, admr." But as just stated, the record discloses that it was not counted. The fig-

ures "24" are found to the left of her name on the line of the signature. It is not pretended that they were there when her name was written. On the contrary, it is claimed by the plaintiff that the city engineer put them there as the number which he counted her and which went to make up the total of thirty-two which he reported. Such claim is in the face of the report disclosing that they did not count it. While we may surmise that her name was possibly counted, yet if we go into mere conjecture, could we not with much more reason say that the number may have been placed opposite her name with other numbers and memoranda which appear at other places, at some time during the investigation by the committee, but not relied upon or considered when the final result was reached as embodied in the report to the council. Suppose, for instance, the committee found in going over its work before making out its report that it had erroneously classed some other signer as a non-resident and incompetent to sign, and, in view of the attorney's opinion, had erroneously classed the administrator's signature as competent. Their report would have been just as it is found in the record. But the true answer to make to all these suggestions is that the record must control and that it can not be contradicted by surmise or conjecture, or eked out by oral evidence in any substantial particular.

7. Other objections are presented which it is claimed were also not made in the Knopfi case. These objections are of such character as to fully illustrate the wisdom of the rule which requires that the record of the council must show that it had jurisdiction when it took action involving the power to levy assessments against the property without the consent of its owners. First it is claimed that the court erred in refusing to permit plaintiff to show that the names of several of those appearing in the remonstrance were not the signatures of such persons. That others did not own property on the

street. That there were more than sixty-one resident property owners on the street to be paved. That the name of the First Congregational Church was signed by the chairman of its board of trustees without consulting the other trustees and should therefore not have been considered. That the Sedalia Building and Loan Association and the Equitable Loan and Investment Association were signed by their presidents without authority from their board of directors. These objections show to what length the courts are asked to go in support of a proceeding against the right and property of the citizen. They mean that the record upon which a tribunal vested with extraordinary taxing power upon which property is to be taken against the will of its owner may be modified, changed or destroyed altogether in order to consummate such purpose.

There are numerons cases where oral testimony has been permitted for the purpose of overthrowing and destroying a record providing for the exercise of eminent domain; for public work at the expense of the abutting owner and the like, but such evidence was received and offered in behalf of the citizen whose property was sought to be taken. In such instances, as we pointed out in the Knopfi case, abundantly supported by the authorities, the record of the council may be disputed (except where made conclusive by statute) by the property owner. But that it can not be questioned by the city, in any substantial particular, is made apparent by the suggestion that to hold it could be would be tantamount to holding that no record at all would be necessary in such cases.

8. If the committee counted the signatures referred to as composing a part of the thirty-two remonstrants, it must have been for the reason that they were satisfied these different agents were in fact acting for the persons and corporations for whom they assumed to act. If the names were counted by the committee, they were accepted by the council as having been properly

signed.  That they could properly be so accepted is manifest.  It was not necessary that authority of an agent, or of the officer of a corporation assuming to act for the principal, should accompany the remonstrance. Los Angeles v. Los Angeles, 106 Cal. 156; Tibbetts v. Railway, 153 Ill. 147; Allen v. City of Portland, 35 Ore. 420; Day v. Fairview, 61 N. J. L. 621.

9.  Plaintiff introduced at the trial an ordinance of the city adopting Cushing's Manual as a rule governing its parliamentary action.  Certain sections of the Manual were then introduced to show that the proceedings of the council do not disclose that it governed its action by the report, and that the council might have ascertained in other ways, independent of the report, that the remonstrance, when filed with the clerk, did not contain the names of a majority of the property owners. These sections of the manual (286, 287, 289, 290, 295) show the usual parliamentary manner of procedure when a committee makes a report.  We can not discover anything in them to aid the plaintiff, but rather the contrary.  The last section (295) introduced reads that, "when a report is received  .  .  .  the committee is discharged, and the report becomes the basis of the future proceedings of the assembly on the subject to which it relates."  In this case, as already stated, the committees report that the remonstrance did not contain a majority by reason of the withdrawals being "received and placed on file," and the council thereupon, at the same meeting, proceeded with the ordinance for the improvement.  That is to say, the council, as indicated by the rule, accepted the report as a basis for its future action by immediately going ahead with the ordinance for the improvement.  That the report of the committee that there were sixty-one property owners, of whom thirty-two, less five withdrawals, had protested, was the foundation of the council's action none can doubt.  That there was any other basis is only suggested as a conjecture.

So that even if it should be conceded that according to the sections of the Manual introduced in evidence, the council did not act on the report, the whole record shows that beyond any doubt the council did take it as a basis of its action. But even if the council had acted out of harmony, or in contradiction of the rules of the Manual, it did no more than it legally might do, since such body is not bound to act in accordance with its rules or by-laws. Such bodies may, and perhaps do, oftener than otherwise, waive them. Holt v. City of Summerville, 127 Mass. 411; Bennett v. New Bedford, 110 Mass. 433; Ex parte Mayor of Albany, 23 Wend. 280.

After full consideration of the points suggested in behalf of plaintiff against the judgment of the trial court we have found no error and consequently order its affirmance. All concur.