Sallie M. Blackwell et al., Appellants, v. City of Lee's Summit
et al.

John L. Leibweber et al., Appellants, v. City of Lee's Summit et
al.—31 S. W. (2d) 63.

Division One, October 14, 1930.

*E. C. Hamilton* and *W. H. Carr* for appellants.

*E. S. Bennett* and *Clarence S. Palmer* for respondents.

494

ELLISON, C.—These two suits, instituted by abutting property owners, are to enjoin the city of Lee's Summit and the defendant contractor from constructing two certain paving improvements on Third Street and Douglas Street, respectively, in accordance with the resolutions, ordinances and contracts severally providing therefor. Lee's Summit is a city of the fourth class. The causes were consolidated for trial and heard by the Hon. W. O. Thomas, sitting as

special judge. He found the issues against the plaintiffs and dismissed their bills. They have appealed.

The evidence is hard to understand. Many times witnesses were questioned concerning blue prints and profiles which were not introduced in evidence and preserved in the record. We shall attempt to outline the general facts and later when necessary will give the evidence in greater detail as it bears on each assignment of error.

Third Street runs east and west and intersects Douglas Street which runs north and south. The portion of these streets proposed to be improved, or most of it, lies in the business part of town. The proceedings on each street were inaugurated in March, 1927, by the adoption of separate paving resolutions, under Section 8510, Revised Statutes 1919, Laws 1921, p. 516, Laws 1923, p. 264. The plans for both projects call for vibrated concrete pavement 42 feet wide and 6 inches thick, and for bringing the streets to established grade, excavating for the necessary subgrade, curbing, guttering and draining, the curbing to extend six inches above the gutter, and the pavement to be crowned so that the center will be elevated about nine inches above the gutter. The curbing will come flush against the sidewalks or sidewalk line. In other words there will be no parkway space or grass plot between the sidewalks and the curbing, but the two are entirely separate.

The distance to be improved on Third Street is 862 feet running east to and including the whole area of the intersection with Douglas Street. On the latter street the paving is to start at the south edge of the intersection and run a block south, the two improvements thus forming an L. Third Street for some years has been macadamized for a greater distance in both directions than is to be covered by the new paving. In fact the latter is intended to replace the most worn part of the macadam—in the business section—and at both ends will join on to the old paving.

The grade established for the new concrete paving practically conforms to the surface of the present macadam, except that the latter is rough and uneven, with some scattered holes or depressions as much as a foot deep. Along the north side of Third Street, however, for a part of the distance improved, the sidewalk is three feet or more above the present macadam. On that side the new pavement is to be raised about nine inches. The sidewalk on the opposite, or south, side of the street at these points is very little if any higher than the curb will be. Neither sidewalk will be disturbed or changed by the paving; but there was some testimony that during heavy rains water from the street as it is now sometimes runs over this low sidewalk and on to the abutting property on the south side of the street, and the opinion was expressed that raising the level of the paving on the north side of the street probably will make this condition

worse. But the further fact was elicited from appellant's witnesses on this point that the crowned center of the paving will be nine inches higher than the gutter on the north side of the street, which will confine the water on that side of the street to its own gutter unless the storm sewer should get stopped up.

Remonstrances were filed by abutting property owners against both projects. The appellants contend these were sufficient to deprive the mayor and board of aldermen of authority to contract for the improvements. The facts bearing on these questions will be stated later.

I. The first point made by the appellants in the trial court and here is that the paving proceedings and contract are invalid, or at least that the city and contractor have no authority to proceed thereunder, because no steps have been taken to ascertain and compensate abutting property owners for damages caused by the change in the street grade, in accordance with Section 21, Article II, Constitution of Missouri. This section provides that "private property shall not be taken or damaged for public use without just compensation," which "shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law," and then continues (italics ours) : *"and until the same shall be paid to the owner, or into court for the owners, the property shall not be disturbed or the proprietary rights of the owner therein divested."*

The cases cited by appellants as sustaining their contention are State ex rel. v. Christopher, 317 Mo. 1179, 1200, 298 S. W. 720, 728 ; City of Kirksville v. Ferguson, 262 Mo. 661, 668, 172 S. W. 4, 5 ; Hickman v. Kansas City, 120 Mo. 110, 116, et seq., 25 S. W. 225, 226 ; Davis v. Mo. Pac. Ry. Co., 119 Mo. 180, 187, 24 S. W. 777, 779 ; St. Louis v. Hill, 116 Mo. 527, 536, 22 S. W. 861, 863 ; City of Kirksville ex rel. v. Coleman, 103 Mo. App. 215, 221, 77 S. W. 120, 122.

We shall not discuss these authorities in detail. All, or most of them, hold that under the constitutional provision aforesaid an owner is entitled to compensation not only when his property is taken for public use, but also when consequential damage thereto results though the property be not *taken*, as where the grade of an adjoining street is changed—and in so holding they agree with all the other Missouri cases on the subject decided since the adoption of our present Constitution in 1875.

But not many of them are in point on the exact proposition urged by the appellants here. In one or two of the cases there are general expressions indicating that an abutting property owner must be compensated for any and all damages suffered, regardless of their nature, before the public improvement *can be constructed*. Thus, in the Ferguson case where a sidewalk was to be built on a grade about a

foot higher than theretofore, the court said (262 Mo. 1. c. 669, 174 S. W. 1. c. 5) without citing any precedents: "Under the Constitution of this State (it) could not be done until the damages and benefits which might accrue by the change of grade have been assessed and paid." And in the Hickman case, where the grade of a street was raised 3½ feet, the opinion declared the abutting property owner had "a constitutional right to have his damages ascertained and paid to him or into court for his use before his property was disturbed."

These holdings appear to sustain the appellants' contention, but they are in conflict, or partly so, with an unbroken line of decisions in this State beginning in 1904 and continuing down to the last volume of our reports: Clemens v. Conn. Mut. Life Ins. Co., 184 Mo. 46, 82 S. W. 1; McGrew v. Granite Bituminous Paving Co., 247 Mo. 549, 155 S. W. 411; Lemon v. Garden of Eden Drainage Dist., 310 Mo. 171, 275 S. W. 44; Tremayne v. St. Louis, 320 Mo. 120, 6 S. W. (2d) 935, the last being a Banc opinion having the concurrence of the full court. The doctrine of these cases is well summarized in the following quotation from the Clemens case:

"Where the property of the citizen is not taken and his proprietary rights not disturbed, but the damage to his property is purely consequential, he is not entitled to have the same ascertained and paid before the proposed public work is done, and is not entitled to have . . . work done in pursuance of valid legislative and municipal authority enjoined until his damages are ascertained and paid, but . . . his remedy is one at law for damages."

By these authorities, as will be seen from the foregoing, the damages which a landowner may suffer and for which he may recover are divided into two classes, direct and consequential; and the provision in the Constitution that until compensation is paid "the property shall not be disturbed or the proprietary rights of the owner therein divested" is held to refer to the former class only. In other words the constitutional prohibition is construed to require the payment in advance of only such damages as arise out of a disturbance of the property or the divestiture of the owner's proprietary rights. These, it is said in the McGrew case (247 Mo. 1. c. 562, 155 S. W. 1. c. 414), represent compensation for the part of the property actually taken and the diminished value of the remainder as a result of the taking of the part taken and the construction of the improvement thereon. Any other damages are consequential.

Without going further into that question (see Van DeVere v. Kansas City, 107 Mo. 83, 88, 90, 17 S. W. 695, 696-7) it is evident the damages suffered by the appellants in this case (if any) are purely consequential. They are so held to be in the group of cases last cited above. In the main the street grade is not changed. No part of the abutting property is taken or physically touched. The

sidewalks on both sides are not disturbed. The entrance to the property is not affected. The only damage suggested is that in times of heavy rain water may flow in greater volume than it does now from the north side of Third Street, where the grade has been raised less than a foot, to the south side and across the sidewalk onto the abutting property. This assignment is ruled against the appellants.

II. It is next insisted that independent of the Constitution the city should have initiated condemnation proceedings to compensate the appellants for their damages under Section 8530, Revised Statutes 1919. This section, applicable to cities of the fourth class, provides that "whenever the mayor and board of aldermen shall provide by ordinance for establishing, opening, widening, extending or altering any street, avenue, alley, . . . or for the *taking* of private property for any other necessary public purpose, and it shall become necessary for that purpose to take or damage private property," they shall by ordinance establish a benefit district and the city shall then apply to the circuit court or judge, in vacation, by petition "setting forth the use for which said land is to be *taken* and dedicated," etc., for the appointment of three disinterested commissioners to assess benefits and damages within the district, in accordance with the further provisions therein set out.

The foregoing is sufficient to show the section is intended to provide an eminent-domain procedure for the assessment of damages when property is *taken* by condemnation, and that it does not contemplate or cover the assessment of purely consequential damages when no property is taken. The statute was first enacted as a part of Laws 1911, page 342 et seq., covering Sections 8539-8540, Revised Statutes 1919. An examination of these will show the context of the act bears out the construction just put on the section under discussion. Furthermore, there is nothing in the act making a compliance with its provisions a condition precedent to the construction of a public improvement except where Sections 8537 and 8539 say the city shall not be entitled to judgment for possession or possession of the property sought to be *taken*, until the full compensation has been paid. This of course does not apply to purely consequential damages where no property is taken.

III. Along the same line appellants invoke Sections 8676 and 8679, Revised Statutes 1919. The former provides that "in all cases where the proper authorities in any city in this State have graded or re-

graded, or may hereafter grade or change the grade or lines of any street or alley, or in any way alter or enlarge the same . . . thereby causing damage to private property for public use, within the meaning of section 21 of article II of the state Constitution, without the consent of the owner," the circuit court or judge in vacation, on proper application, shall appoint three disinterested freeholders to assess the damages occasioned or likely to be occasioned by the improvement. Section 8679 provides for a review of the report of the commissioners in the circuit court.

These sections were enacted by Laws 1885, page 47, and Laws 1887, page 37. They have stood unchanged since; but appellants have pointed us to no case decided during the intervening 43 years where it is held that damages to private property for a public improvement must be assessed under them and satisfied before the work can go on—where the damages are purely consequential and not such as the Constitution requires to be paid in advance. Obviously such is not the fact. The main section, Section 8676, has been discussed by this court several times, as in Hickman v. Kansas City, supra. 120 Mo. 110, 117; St. Louis v. Wallrath, 293 Mo. 385, 239 S. W. 110. And undoubtedly its purpose is to provide a means of ascertaining and awarding to a private property owner the compensation allowed him by the Constitution. But the statute does not go further than the Constitution. It does not require the assessment and payment of pure consequential damages before a public work can be constructed.

IV. The next assignment made is that the paving proceedings are void *in toto* because based on Section 8510, as amended by Laws 1921, page 516, instead of Section 8511, Revised Statutes 1919. Under the former a majority of the owners of the property liable to taxation for the improvement, residing in the city at the date of the passage of the paving resolution, can deprive the city authorities of power to proceed with the project by filing their remonstrances. Under the latter section when the paving improvement is not more than 1200 feet in length and connects at both ends "with paving, macadamizing, guttering, curbing, grading or other improvements either on the same street or avenue or other streets or avenues, or on the same street or avenue and another street or avenue," the board of aldermen shall declare the work necessary to be done and publish a resolution to that effect as provided in the other section (8510), but the property owners cannot thwart the improvement by remonstrating. However the board of aldermen must set a day for hearing oral protests and give notice of it in the resolution, although they will not be bound by such objections.

In the present instance the proposed paving improvement is not more than 1200 feet in length and it will connect at both ends with the old macadam on the same street. These facts, say the appellants, bring the case within Section 8511, and the board did not set a day for oral protests or give notice of it in the resolution.

There may be some doubt, as respondents strenuously insist, whether Section 8511 covers a situation where the contemplated improvement consists merely in reconstructing or replacing an intermediate portion of a street already improved. But to our minds that question is not important here, because we think the course prescribed by Section 8511 is not exclusive. Section 8510 also furnishes a method of providing for street improvements by special assessment and it contains no exceptions. In fact it was the only way in cities of the fourth class until the present Section 8511 was enacted by Laws 1917, page 384. The obvious purpose of the latter was to allow the filling in of gaps for limited distances between streets or parts of the same street, already improved. The act evidences a legislative hesitancy to deprive abutting property owners of the right to remonstrate, and yet sparingly recognizes the necessity of forcing in such improvements when the public welfare demands it. The construction which most nearly accords with the disclosed intention of the lawmakers, the one fairest to the citizen and the municipal authorities, is to say Section 8511 did not take away altogether the right of remonstrance against improvements of the class it covers, but that the two statutes provide alternative methods either of which may be followed by the board of aldermen at their option. Since, as we hold, it was proper to bottom the proceedings in this case on Section 8510, the contention of appellants must be disallowed.

V. Appellants make the further assignment, however, that respondents have not brought themselves within Section 8510, even if it is applicable to a paving of the kind shown by the evidence, for the reason that that section expressly authorizes the construction of curbing only "when such is set out in the street beyond the sidewalk," whereas the curbing proposed to be constructed by respondents will be flush against the sidewalk. There is nothing to this point. The statute does not mean that the curbing must be set out some appreciable distance into the street, or that there must be a parkway or open space between the curb and the sidewalk. The requirement merely is that the curbing must be on the street side of the sidewalk, as distinguished from the property line, and that it be a part of the paving improvement and not a part of the walk.

VI. The next assignment is that the remonstrances against the paving on Third Street and Douglas Street were sufficient. On Third

Street there were 26 resident property owners eligible to sign, of whom 17 did sign. But five withdrew their names before the time for filing protests had expired. The appellants maintain these withdrawals could not be made and did not reduce the number of protestants to a minority, citing two cases which do sustain their contention: Knopfi v. Gilsonite Roofing & Paving Co., 92 Mo. App. 279, and City of Sedalia ex rel. v. Scott, 104 Mo. App. 595, 78 S. W. 276. But these cases have been overruled and the contrary is held in Sedalia ex rel. v. Montgomery, 227 Mo. 1, 9, 30, 127 S. W. 50, 51, and City Trust Co. v. Crockett, 309 Mo. 683, 709, 274 S. W. 802, 808.

Thirteen property owners were eligible to sign on Douglas Street. Six did sign. Of these one was a man who with his wife owned an abutting tract as tenants by the entirety. The wife did not sign. The appellants contend that the signature of the husband entitled the remonstrants to count both names against the improvement, citing Findley-Kehl Inv. Co. v. O'Connor (Mo. Banc), 256 S. W. 798, 802. That case was under the front-foot rule. The court held the signature of the husband alone was sufficient to make the whole *frontage* of the property count against the improvement. But in Kitchen v. City of Clinton, 320 Mo. 569, 8 S. W. (2d) 602, after fully considering the O'Connor case, this Division held that where the protest is to be measured on a *per capita* basis both the husband and wife must be counted as owners in determining the number of eligible signers. If that is so, and one of them fails to sign, then undoubtedly, indeed, mathematically, one must be counted for and one against the improvement. Appellants are in error in their contention.

VII. Resolution 3 and Ordinance 128 for the improvement of Third Street (including the intersection with Douglas Street) provide the cost of the entire work, viz., grading, paving, curbing, guttering and draining, shall be levied as a special assessment "upon all lots and pieces of ground *upon either side of said street abutting thereon, as provided by law.*" (Italics ours.) But the answer filed by the respondent city and contractor to the appellants' amended petition, in denying the charge that the Third Street remonstrance was sufficient, alleged the whole number of persons entitled to protest included those having property abutting on Third Street in the block next east of the Douglas Street intersection, where the paving is to end; and that of this whole number less than a majority had remonstrated. The appellants construe these allegations as an admission that the paving resolution and ordinance contemplate the lots on Third Street in the block east of

Douglas Street shall be assessed with their proportionate part of the cost of improving the Douglas and Third Street intersection.

The appellants' argument is that under the law no property can be assessed except such as abuts on the *improved portion* of Third Street, and inasmuch, they say, as the paving resolution and ordinance disclose an intention to assess property in the block next east of the eastern terminus of the paving, the proceedings are void and the injunction against the city and contractor should be granted. In support of this contention they cite State ex rel. Meek v. Chillicothe, 237 Mo. 486, 141 S. W. 602; Boonville Mercantile Co. v. Hogan, 205 Mo. App. 594, 227 S. W. 874. But these decisions do not sustain the appellants. Both construe statutes wholly unlike the one applicable to the instant paving proceedings. The Chillicothe case considers Section 6266, Revised Statutes 1899, and the Boonville case Laws 1911, page 337 (Sec. 8323, R. S. 1919), Section 8504, Revised Statutes 1919, is the statute controlling paving proceedings in cities of the fourth class (to which Lee's Summit belongs) as is expressly held in the Chillicothe case (237 Mo. 1. c. 495, 141 S. W. 1. c. 604); and that section does require intersection areas formed by the crossing or meeting of streets to be divided into parts or portions by lines drawn lengthwise along the middle of the streets intersecting or meeting, and says ''the cost of said parts or portions shall be levied as a special assessment against the block or square contiguous to each, and prorated against the lots or pieces of ground in such block or square abutting on the street improved.'' This would make the properties fronting on the two sides of Third Street in the block east of the Douglas Street intersection liable to assessment, respectively, for the cost of improving the contiguous quarters of that intersection, notwithstanding the lots do not front or abut on the improvement. [City of Rock Port ex rel. v. McMichael, 221 Mo. App. 917, 923, 288 S. W. 785, 788; City of Rolla v. Schuman, 189 Mo. App. 252, 258, 175 S. W. 241, 243.]

So, even if Paving Resolution 3 and Ordinance 128 mean what appellants say they mean, or rather, what appellants say respondents say they mean, they are not in conflict with the statute. But as a matter of fact all the resolution and ordinance do say is that the cost of the whole improvement shall be levied as a special assessment ''upon all lots and pieces of ground upon either side of said street abutting thereon, *as provided by law.*'' Instead of requiring an assessment not authorized by law they expressly provide in general terms that it shall conform to the law. The proceedings are not assailable on the ground assigned.

Finally, appellants urge the paving resolution and ordinance are in conflict with Section 8504, aforesaid, because they require *all* work done on the intersections, namely, the grading, paving, curbing, gut-

tering and draining, to be assessed against the property on Third Street in the blocks cornering on the intersections, whereas, appellants assert, Section 8504 only covers the assessment of the cost of *paving or macadamizing* street intersections, and does not contemplate that the cost of grading, curbing, guttering or draining shall be assessed as therein specified. In other words, appellants limit the application of Section 8504 to paving or macadamizing alone, and say it does not cover any other operations or parts entering into the construction of a street pavement in the intersection areas, such as grading, curbing, guttering, draining and the like. In our opinion the words "paving or macadamizing" as they appear in Section 8504 do not have the narrow and restricted meaning attributed to them by appellants, but are used in their comprehensive and generic sense. [See Muff v. Cameron, 134 Mo. App. 607, 114 S. W. 1125; City of Excelsior Springs v. Ettenson, 120 Mo. App. 215, 227, 96 S. W. 701, 705; 3 Words & Phrases (2 Series) p. 923; 6 Words & Phrases, p. 5239.]

But appellants' contention must be overruled for another reason, and that is that appellants are in error when they assert the resolution and ordinance specify how the cost of improving the street intersections shall be assessed. As heretofore pointed out both the ordinance and resolution simply provide generally that the cost of the whole work shall be assessed against the lots on either side of Third Street, "as provided by law;" there is no special reference to the intersections at all.

Finding no error in the record the judgment of the circuit court is affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted **as the** opinion of the court. All of the judges concur.