John NIEHAUS, Paul A. O'Neill and Dennis Zavidil, Trustees of Bayberry Hills Subdivision, Plaintiffs-Appellants,

v.

John C. MITCHELL and Mrs. John C. Mitchell and Albert Maescher, Jr., and Mrs. Albert Maescher, Jr., Defendants-Respondents.

No. 32374.

St. Louis Court of Appeals.

Missouri.

June 13, 1967.

Motion for Rehearing and Modification, or to Transfer to Supreme Court Denied July 7, 1967.

Application to Transfer Denied Sept. 11, 1967.

Robert T: Ebert, Robert R. Young, St. Louis, for appellants.

David G. Dempsey, Dempsey, Zerman & Dempsey, Clayton, for respondents.

CLEMENS, Commissioner.

By these consolidated actions the plaintiff subdivision trustees seek judgments for the amounts of special improvements assessed against the defendants' lots, plus interest and attorney fees. Judgment in the circuit court went for the defendant lot owners, and the plaintiff trustees appeal.

The ultimate issue is the legality of the assessment. That hinges on the answer to this question: Where an assessment could be levied only upon a petition to the trustees signed by the owners of 51 per cent of the lots in the subdivision, should lots held by the entirety be counted where only one of the owning spouses signed the petition? Our answer is no. We come to this conclusion in two steps. First, we have decided that the requirement calls for a majority of lots rather than a majority of persons. Second, we have decided that where a lot is owned by the entirety it can be burdened only by the joint action of both spouses.

The lot owners' petition to the trustees shows one or both signatures for 36 of the 63 taxable lots: for 12 lots both husband and wife signed; for 24 lots only one person signed. Thus, if we count lots where one or both spouses signed, then the owners of more than 51 per cent of the lots did sign the petition to the trustees. But if we count only the lots where both spouses signed the petition, then the owners of less than 51 per cent of the lots signed the petition.

The two cases were filed in magistrate court and from there certified to the circuit court, where they were consolidated and submitted on an agreed statement of facts. It stipulated: (1) The plaintiffs are the trustees of Bayberry Hills subdivision under a trust indenture. (2) Defendants Mr. and Mrs. John C. Mitchell own one lot in the subdivision and defendants Mr. and Mrs. Albert Maescher, Jr., also own one lot. (3) On June 5, 1962, the trustees resolved that each lot be assessed $70, payable July 1, 1962, and the trustees so notified all lot owners by letter requesting their written approval. (4) There are 63 lots subject to special assessment. The agreed statement of facts further stated: (5) "That attached hereto and made a part hereof is the executed form signed by either the husband or the wife, or both, as joint owners of thirty-six (36) lots, or fifty-seven per cent (57%) of the lots subject to special assessments; that the total number of lots wherein signatures of both the husband and wife as joint owners were obtained was less than fifty-one per cent (51%) of the lots subject to the special assessment." (6) "That all lot owners, excepting defendants herein, have paid the special assessment."

To set the stage for the trustees' actions, we spotlight the key parts of the trust indenture: It empowered the trustees to maintain Bayberry Lane, a 40-foot private street running through the subdivision. For this maintenance the trustees on their own initiative could levy an annual 25 cents-a-foot assessment against abutting lots. Beyond this normal maintenance, the trust indenture mapped out a three-step procedure for levying assessments to pay for additional street improvement like that involved here. The first step was a petition requesting the improvements, "signed by the owners in fee of lots in said subdivision who will have to pay at least fifty-one per cent (51%) of the cost * *." The second step to be taken, pursuant to the owners' request, was for the trustees to estimate the cost and assess it pro rata against all lots. The third step was a notice from the trustees to the lot owners telling them the amount and due date of the assessments.

On June 5, 1962, without any prior request from lot owners, the trustees began the action on which they base their claim for the special assessments. Their minutes recite: " * * * It was unanimously agreed to accept the contract from Maplewood Construction Co. for $5,465.00 for Road repairs * * *. It was agreed that a petition will be circulated to authorize a special assessment of 70¢ a front foot (100 ft. per lot) for street repairs. Assuming that the signatures can be acquired within a week, the special assessment will be payable July 1, 1962. A letter was drafted to so inform all property owners of this action. Copy attached."

The letter sent to the lot owners recited the "proposal of Maplewood Construction Co. in the amount of $5,462" for street repairs, said that a petition would soon be circulated among the lot owners to authorize an assessment of $70 per lot, and concluded: "Assuming that the required signatures can be acquired within a week, the special assessment will be payable on July 1, 1962. * * *"

By proceeding in that way the trustees ignored the prescribed three-step procedure. They started with the second step by accepting a bid for repairs and levying an assessment—without prior request from the lot owners; then they took the third step by notifying the lot owners of the assess-

ment; last they sought to meet the requirement of the first step by requesting the owners to sign a petition that should have been initiated by the lot owners. We pass over the irregularity of this procedure, however, to reach the crucial issue briefed by the parties: the sufficiency of signatures on the lot owners' petition.

The authority of the trustees to levy the assessment was conditioned on a written petition "signed by the owners in fee of lots in said subdivision who will have to pay at least fifty-one per cent (51%) of the cost of such contemplated improvement or improvements." Shorn of excess verbiage— and considering that each of the 63 lots would be charged with ⅓rd of the total cost—this condition can be interpreted to read "signed by the owners of 51 per cent of the lots." We will so consider it.

The plaintiff trustees argue that this condition was met by the agreed fact that the petition was "signed by either the husband or the wife, or both, as joint owners of thirty-six (36) lots, or fifty-seven per cent (57%) of the lots * * *." By contrast, the defendants insist the provision for signatures by the owners of 51 per cent of the lots is disproved by the other agreed fact that "the total number of lots wherein signatures of both the husband and wife as joint owners were obtained was less than fifty-one per cent (51%) of the lots * *." In support of their contrasting interpretations, the plaintiff trustees cite cases based on a condition requiring consent by a *majority of persons* who own interests in the lots, and the defendants cite cases based on a condition requiring consent by the owners of a *majority of the lots*.

■■■ The first issue then, pared to the bone, is this: Does the condition refer to a majority of persons or a majority of lots? We repeat the condition—"signed by the owners *in fee of lots in said subdivision who will have to pay at least fifty-one per cent (51%) of the cost* * * *." We think a fair reading of the condition calls

for a majority of lots, not a majority of persons. But even if there was doubt about this interpretation, the same goal would be reached by applying the well-traveled and analogous rule that ambiguous tax legislation is construed in favor of the taxpayer and against the taxing authority. A. P. Green Fire Brick Co. v. Missouri State Tax Com'n, Mo., 277 S.W.2d 544[4]. The principle is equally sound here. 48 Am. Jur., Special or Local Assessments, § 4.

Anticipating this interpretation that the petition must be signed by the owners of a majority of the lots, the plaintiff trustees put forth their principal contention: that where a lot is owned by the entirety, the signature of one spouse suffices as the signature of the lot owner. The plaintiffs cite three cases to support this contention. However, our conclusion that the plaintiffs' authority was conditioned on consent by the owners of a majority of the lots distinguishes our case from plaintiffs' cited cases. This, because the cited cases concern special assessments where remonstrances were measured *per capita* rather than by the number of lots, as here. Thus, in both Rhodes v. Koch, 195 Mo.App. 182, 189 S.W. 641, and Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.2d 602, the pertinent statutes concerned remonstrances by "a majority of the resident owners." Similarly, in Blackwell v. City of Lee's Summit, 326 Mo. 491, 32 S.W.2d 63, the statute concerned "a majority of the [resident] owners of the property liable to taxation." All three cases hold that where the number of remonstrances is to be measured *per capita*, the husband and wife are each counted as an owner. These three cases are no help to us because here the magic number is the number of lots, not the number of individual owners. This distinction was similarly noted by us in Marks v. Bettendorf's, Inc., Mo.App., 337 S.W.2d 585[19].

To further support their contention that the signature of one spouse suffices as the signature of the lot owner, the plaintiffs

cite Findley-Kehl Inv. Co. v. O'Connor, Mo. (banc), 256 S.W. 798[8]. Superficially that case does support plaintiffs. It concerned the necessary number of remonstrances under an ordinance that barred a special assessment upon objections by a majority of the residents owning a majority of the front feet on the street. Thus, the count was based both on persons and ownership. The "Sills lot" was owned by the entirety, but only Mr. Sills signed the remonstrance. The question was whether to count the whole frontage of the lot or only half of it. The outcome of the case depended on other issues—not just on the Sills lot—and the Supreme Court answered the question rather summarily: "The ownership of Sills, who signed, pertained to the whole frontage or estate and not a part. This is true, although the wife was living. She likewise was an owner of the whole. We think this whole frontage should be counted."

That statement from the Findley-Kehl case does not control our decision—for two reasons. First, the case resulted in a decision, not an opinion. Second, the case concerned an act by one spouse to *protect* the property rather than to *burden* it, as here. These reasons in turn.

The Findley-Kehl case was considered by our court in Marks v. Bettendorf's, Inc., supra. In rejecting the quoted statement we said, at 337 S.W.2d l.c. 594:

"The opinion of the writing judge in the above case was concurred in by two others, and one concurred only in the results. Three judges dissented. Since the results could be reached and the trial court affirmed without counting the estate by the entirety in the Findley case, we can only conclude that four of the seven judges disapproved of the law as stated by the writer of the opinion. The effect of the Findley opinion was to affirm the trial court and nothing else, and is therefore not authority on any legal point."

For this reason we need not follow the portion of the Findley-Kehl case on which plaintiffs now rely.

■ A contrary result was reached in Marks v. Bettendorf's, Inc., supra. It is akin to our case because it, too, concerned a majority of area rather than a majority of owners. Also, it squarely presented our problem of the numerical sufficiency of signatures where only one of two spouses signed for a lot owned by the entirety. There, the legislative power to change zoning ordinances could not be exercised if there was a protest by the *owners of ten per cent of the land* in the area of the proposed change. We distinguished this ordinance provision from other cases "wherein the sufficiency of the protest is not measured by the area represented, but by the number of the owners that signed." In the Marks case, some of the lots were owned by the entirety but only one of the spouses had signed the protests; and eliminating the lots so signed for, the required ten per cent of the whole area was not met. In denying the sufficiency of the protests we said:

"That property held by the entirety can in such a way be affected by one of the owners, acting in his own behalf, is completely repugnant to the character of such estates. For this reason, we hold that tracts held by the entirety, where only one owner signed, should not have been counted in arriving at the amount of footage represented by the objectors."

We follow that ruling and now hold that the trustees may not count the requests of lot owners where the request was made by only one of two spouses owning lots by the entirety. Therefore, the petition to the plaintiff trustees was insufficient authority for their assessment because the petition was not signed by owners of 51 per cent of the lots affected by the assessment.

■ The second distinction between our case and the Findley-Kehl case—that of

burdening the property rather than protecting it—appears in the dissent by Ruddy, J., in Marks v. Bettendorf's, supra. The plaintiffs urge us to follow the dissent. That would not help them, however, because it was applied to situations where the lone spouse acted to protect rather than to burden the entirety estate. In the Marks case, as in every case cited in this opinion, the issue was the authority of one spouse to sign as an owner to protect the property against proposed municipal action, such as a tax assessment or a zoning change. Here, we have the other side of the coin: the authority sought by these plaintiffs was the permission of lot owners to burden the lots. In his dissent (337 S.W.2d l. c. 597), Judge Ruddy "distinguished between a situation where one cotenant attempted to impose a burden on the interests of the other cotenant and one where the cotenant through his act or signature was protecting the entire estate from injury or loss." He said:

"My brother judges hold that it 'is completely repugnant to the character' of property held by the entirety to permit the signature of one to affect the property. This statement is correct if it is applied to a situation where one of the owners attempts to burden the property with the cost of an improvement which will result in a tax lien against the property or in any similar situation where the nature of the petition signed imposes a burden on the property."

This statement cleaves to the principle that where land is held by the entirety the husband and wife hold it not as separate individuals but as one person, and neither one acting alone can adversely affect the other's interest. Samuel v. Frederick, Mo., 262 S.W. 713[3], and Robinson v. Pattee, 359 Mo. 584, 222 S.W.2d 786[2]. The principle has been applied to block the action of a husband—acting alone—to encumber an estate by the entirety with a mechan-

ic's lien (Magidson v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144[4]), and the husband's action to bind his wife's interest by signing a contract to sell their real estate (Austin & Bass Builders, Inc., v. Lewis, Mo., 359 S.W.2d 711[2, 8]). The principle is just as binding here.

So, Judge Ruddy's dissent is actually authority for *defendants'* theory here: that where only one of two lot-owning spouses signed the petition to burden their land with an assessment, their lot cannot be counted among those whose owners requested the assessment.

Plaintiffs put forth two further arguments that the trial court erred in not finding for them. They say the defendants—"by their silence, inaction, and refusal to seek injunctive relief"—are *estopped* from questioning the validity of the lot owners' petition. They point to the agreed statement that "all lot owners, excepting defendants herein, have paid the special assessment." From this, plaintiffs argue that "certainly the majority of lot owners necessary to request the improvement have *ratified* and corrected any possible error in the petition * * *." Without any attempt at definition, we can safely say that the principles of estoppel and ratification are based on evidence of such complex factual elements as knowledge of the facts, acceptance of benefits, change of position, agency, and approval of conduct. If plaintiffs wanted to rely on defendants' acts to show estoppel and ratification in order to make their own case, then the burden was on plaintiffs to show those acts. The only evidence here is the agreed statement of facts. It is devoid of evidence on which plaintiffs now base their argument of estoppel and ratification, so we reject the argument.

The judgment for defendants is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY, and WOLFE, JJ., concur.